**UNDERWOOD v. PINSON et al.**
No. 34898.

Supreme Court of Oklahoma.
Nov. 17, 1953.

$100,000 and deposited the money in a separate bank account in his own name. Shortly thereafter Mrs. Frances Lewis, who for many years had been a secretary of law firms of which Mr. Underwood was a member, learned of the existence of this account in the course of her regular duties in opening the office mail, and made a casual remark about it to Mr. Underwood. He told her that he had sold the stock in question. Later he handed Mrs. Lewis a slip of paper bearing his directions for setting up the gain from the sale of the stock. She testified:

"When he handed me the sheet of paper, he said, 'show this on my tax return.' I said: 'You mean your personal return', and he said, 'Yes, for now.'"

The firm of Underwood, Canterbury, Pinson and Lupardus was dissolved on December 31, 1941, and was immediately succeeded by a firm called I. J. Underwood and Associates; the members were Underwood, Rodolf, Pinson and Lupardus. This firm was dissolved by the death of Mr. Underwood on July 10, 1947, and was immediately succeeded by the firm of Rodolf, Pinson and Lupardus, of which Mrs. Lewis was secretary. This firm was itself dissolved in December, 1947, by the death of Mr. Rodolf.

On July 28, 1947, Mrs. Underwood, widow of the deceased, was granted by the County Court, letters testamentary as executrix of his will. She retained as her attorneys, the firm of Rodolf, Pinson and Lupardus. Sometime around the first of August, 1947, Mrs. Lewis, for the first time, disclosed to Pinson and Lupardus all the facts about the sale of the stock and opening of the bank account. At that time Mrs. Underwood was in Minnesota; she had previously hired Mrs. Lewis on a part time basis, to assist her with the office work in the execution of her husband's will. When Mr. Pinson learned that Underwood had sold the stock and deposited the proceeds in his own account, he said "Well, we can't do anything about it." Mrs. Lewis replied "I can get Mrs. Underwood to sign the checks. I am writing her anyway and

Bradford J. Williams, Fenelon Boesche, Richard B. McDermott, Tulsa, for plaintiff in error.

R. D. Hudson, Paul Pinson, O. L. Lupardus, Tulsa, for defendants in error.

WILLIAMS, Justice.

The facts which gave rise to this cause of action are as follows:

In December, 1941, the law firm of Underwood, Canterbury, Pinson and Lupardus accepted 600 shares of stock of low value in satisfaction of a $500 attorney fee. The stock was assigned to Mr. Underwood, the senior member of the firm, and it stood in his name and was in his possession till March of 1946, when he sold the stock for

will have her sign the checks and we will transfer it." The same day Mrs. Lewis wrote a long letter to Mrs. Underwood concerning business of the estate, and the following paragraph was included:

"Herewith also checks payable to I. J. Underwood and Associates to transfer trustee accounts for office business which were not in our general account but stood in I. J.'s name. In order to get these off to you today, I have left the amounts blank for I want to check my balances with the bank's balance before filling in the amounts. Disbursements on these will be made through the office and show in the amended tax returns which we must file before next Monday."

The amended tax returns referred to were made necessary by the fact that Mr. Underwood had included the entire $100,000 in his personal income tax return; the amended returns were required in order to get a refund of that portion of the tax which covered the other partners' share of the $100,000.

On receipt of the letter of which the above paragraph was a part, Mrs. Underwood signed the checks and returned them to Mrs. Lewis. She filled them in for about $73,000 (all that was left in the account) and the checks were deposited in a new account on which Pinson, Lupardus and Mrs. Lewis were authorized to write checks. Thereafter the money in this account was distributed to the surviving partners of the firm of Underwood, Canterbury, Pinson and Lupardus, and to Mrs. Underwood as the personal representative of the deceased partner, Mr. Underwood.

When Mrs. Underwood returned from Minnesota, she learned for the first time of the transactions above set out; she immediately discharged the firm of Rodolf, Pinson and Lupardus as her attorneys, and some months later filed an action in district court against Pinson and Lupardus individually and as survivors of the partnership of Rodolf, Pinson and Lupardus, and against Mrs. Lewis. The demurrer of Mrs. Lewis was sustained by the trial court, and she is not a party to the case here. In her petition, Mrs. Underwood, as executrix, sought to avoid the transaction by which Pinson and Lupardus got possession of the surviving partners' share of the $100,000 bank account, on the grounds that they had "dealt in the subject matter of their employment" while they were her attorneys; she asked for the return of $60,000 or damages in that amount, and that the court impress a trust upon that part of the $60,000 remaining in the possession of Pinson and Lupardus (Mr. Canterbury's share had previously been paid to him).

Defendants' answer set up their claim to the money, as outlined herein.

Although plaintiff argues that the firm of Underwood, Canterbury, Pinson and Lupardus was not a partnership of which Pinson and Lupardus were members, we think the evidence conclusively proves otherwise. Letters constituting the partnership contract were introduced in evidence which showed that net profits were to be divided as follows: 40%, 32%, 16% and 12% respectively to the members as their names appeared in the firm name. It was shown that Mr. Underwood had prepared partnership income tax returns for the partnership for all of the years of its existence, except of course, the year in which he died. It was also shown that in 1943 he wrote two letters in which he said "I have an interest in some Kentucky Natural Gas preferred stock" and "There are some other parties interested in this stock with me and I will consult with them". In 1945 he wrote letters in which he referred to "my Kentucky Natural preferred stock". At this time (1945) the stock had apparently multiplied many times in value. The plaintiff did not allege nor prove that between 1943 and 1945 Mr. Underwood bought the stock from his partners.

Prior to trial, the court ordered the addition of the following parties as defendants: Pinson, Lupardus and Mr. Sam Canterbury, individually and as survivors of the partnership of Underwood, Canterbury, Pinson and Lupardus. However, plaintiff and defendants refused to amend

their pleadings to state a cause of action as to Canterbury, and he was later dismissed as a party defendant.

At the conclusion of all the evidence, defendants' motion for a directed verdict in their favor was sustained. From the order sustaining such motion, and the judgment pronounced upon such directed verdict, plaintiff appeals.

Plaintiff made a vigorous effort in the trial below to have the issues confined to whether or not defendants had violated the trust which existed pursuant to the attorney-client relationship between plaintiff and defendants. However, it is apparent from the remarks of the trial court contained in the record, that he considered the real issues to be (1) whether a partnership of which Underwood, Canterbury, Pinson and Lupardus were members existed when the stock was received in satisfaction of a fee due such alleged partnership, and (2) who were the real owners of the $60,000 herein involved.

Plaintiff presents alleged errors in the court below under three propositions: error in making additional parties defendant, error in not directing a verdict for plaintiff, and error in directing a verdict for defendants.

In support of the first proposition, plaintiff cites Enid Oil and Pipe Line Company v. Champlin, 113 Okl. 170, 240 P. 649. In that case Champlin sued Enid Company for failure to deliver certain oil. Enid Company alleged that a third party, Oil State Company, had received the missing oil and asked that Oil State Company be made a party defendant, which the court did. Oil State objected to being brought into the action, and Champlin refused to plead against it. At the end of the trial, judgment was entered for Champlin against Enid Company and for Enid Company against Oil State. Both Enid Company and Oil State appealed, and the judgment against Oil State was reversed for the reason that the issues between Enid Company and Oil State were not germane to the issues between Champlin and Enid Company.

■ In the case at bar no judgment was rendered against the additional parties defendant (or any defendant), and they did not appeal; the sole objection to the action of the court in joining them is made here by plaintiff. The following rule is therefore applicable:

"Only persons improperly joined can object to the misjoinder". Meshek v. Cordes, 164 Okl. 40, 22 P.2d 921, 927.

■ Granting for purposes of argument only that there was a misjoinder of parties, under the above rule of law, plaintiff herein had no right to complain of such action. However, under the facts in this case, we hold that there was no such misjoinder; see 12 O.S.1951 § 231, which reads:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, *or who is a necessary party to a complete determination or settlement of the question* involved therein." (Emphasis supplied.)

In her petition in the instant case, plaintiff alleged that defendants had wrongfully taken possession of $60,000; upon same being controverted, the question of who was entitled to possession of the money became an issue in the case, and upon it appearing from subsequent pleadings that the firm of Underwood, Canterbury, Pinson and Lupardus, and Canterbury, Pinson and Lupardus individually were claiming the money for the benefit of the firm, it was necessary to make them additional parties defendant in order for the court to render "a complete determination or settlement of the question." Plaintiff's first proposition is therefore without merit. (That the action was dismissed as to Canterbury is of no moment since the partnership of which he was a member was a separate legal entity and such entity was a party defendant, and judgment as to it will be binding upon partnership property. See Hassen v. Rogers, 123 Okl. 265, 253 P. 72.

In support of her second proposition (error of the court in failing to instruct a verdict for plaintiff) plaintiff argues that all of the essential allegations of her petition

have been established and are substantially undenied and that she therefore should recover. With this we cannot agree. Plaintiff cites Board of County Commissioners of Okfuskee County v. Hazelwood, 79 Okl. 185, 192 P. 217, 219, 11 A.L.R. 709, wherein this court said that where an attorney deals in his own interest in the subject matter of the litigation without his client's knowledge and consent, "the question of good faith is not inquired into * * * the transaction is vitiated by the law, irrespective of its merits, fairness, or good faith; and whether it is injurious to the client is immaterial." The wisdom of this rule has been demonstrated many times and we hereby reaffirm it as the law in this state; however, we do not believe it is applicable here, for reasons set out below.

It is to be noted that the rule applies to attorneys who deal in the subject matter of the litigation without the client's knowledge or consent. We do not believe that the money here involved was part of "the subject matter of the litigation", i.e., the estate. To the contrary, the evidence conclusively shows that it was the property of the partnership of Underwood, Canterbury, Pinson and Lupardus which had been received by Mr. Underwood, although, while he lived, he may have considered such funds to be trust funds held by him for the partnership. Whether he so considered them or not, Mr. Underwood was in fact a trustee for the other members of the partnership. See 65 C.J. Trusts, section 220. See also Teuscher v. Gragg, 136 Okl. 129, 276 P. 753, 66 A.L.R. 143, wherein this court said:

"The holder of the legal title * * will in equity be charged as trustee, where it was acquired * * * under such circumstances as to render it inequitable for him to retain."

"The principle is well settled that, where one party had acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner and compel him to convey the legal title."

In the case at bar, Mrs. Underwood, as the personal representative of her deceased husband, stands in his shoes. Her right to the possession of the money was only the right of a trustee, not the right of an executrix to possession of the property of her decedent. Such being the case, the $60,000 was no part of the estate of Mr. Underwood, and defendants herein have not "dealt in the subject matter of the litigation". Regardless of the irregularity or impropriety of the methods they used in this transaction, they have merely taken possession of that which a court of equity in a proper action would have compelled plaintiff to convey to them anyway. Also, the surviving partners of the firm of Underwood, Canterbury, Pinson and Lupardus were required by statute to "settle the affairs of the partnership without delay". 58 O.S.1951, § 255. Such duty necessarily entailed taking possession of the partnership property. This, in essence, is what they did.

Plaintiff's argument under her last proposition (error of the court in directing a verdict for defendants) consists of a discussion of the facts in this case, with no authority cited or quoted. However, we take note of the following general rule with respect to motions for a directed verdict:

"Court may direct verdict where facts undisputed or of such conclusive character that court in sound judicial discretion would be compelled to set aside verdict returned in opposition to it." Sartain v. Walker, 60 Okl. 258, 159 P. 1096, 1105.

We have previously shown that the trial court conceived the true issues in this case to be whether or not a partnership had existed, and who were the real owners of the money involved. This we believe to be a correct conception of the issues herein.

We have given the voluminous record in this case careful consideration, and we hold that it conclusively shows that Pinson and Lupardus were members of the partnership of Underwood, Canterbury, Pinson and Lupardus, and that the funds involved were partnership property. Under such circum-

stances, the court in the exercise of sound judicial discretion would have had to set aside a verdict for plaintiff.

The judgment of the trial court is affirmed.

HALLEY, V. C. J. (now C. J.), having certified his disqualification, Honorable JOHN TILLMAN, of Pawhuska, was appointed Special Justice in his stead.

GIBSON, J., having certified his disqualification, Honorable STREETER SPEAKMAN was appointed Special Justice in his stead.

JOHNSON, V. C. J., WELCH, CORN and O'NEAL, JJ., and TILLMAN and SPEAKMAN, Special Judges, concur.