OSCN Found Document:THE STATE OF OKLAHOMA ex rel. PANTER v. MCVEA

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 THE STATE OF OKLAHOMA ex rel. PANTER v. MCVEA
2025 OK CIV APP 13
Case Number: 121868
Decided: 04/11/2025
Mandate Issued: 05/09/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2025 OK CIV APP 13, __ P.3d __

 

THE STATE OF OKLAHOMA, ex rel. ADAM PANTER, DISTRICT ATTORNEY, Plaintiff/Appellee,
vs.
SHERRAL McVEA, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
POTTAWATOMIE COUNTY, OKLAHOMA

HONORABLE JOHN CANAVAN, DISTRICT JUDGE

REVERSED AND REMANDED 

Stacy S. Bateman-Woods ASSISTANT DISTRICT ATTORNEY Shawnee, Oklahoma For Plaintiff/Appellee

Greg Wilson WILSON LAW FIRM Shawnee, Oklahoma For Defendant/Appellant

GREGORY C. BLACKWELL, JUDGE:

¶1 Sherral McVea12 O.S. § 2025

BACKGROUND

¶2 On May 20, 2020, law enforcement executed search warrants and seized $275,791 and numerous vehicles as part of an investigation into the allegations that Larry McVey and others were involved in the illegal distribution of prescription medication. Approximately two months later, on July 21, 2020, Larry McVey died. That same day, the state filed the underlying civil action--Case No. CV-2020-84--and a notice of seizure and forfeiture against Larry McVey, Larry's wife Sherida McVey, Larry McVey dba McVey Used Cars, and three other individuals. On February 23, 2021, some seven months after Larry McVey's death, the state filed a motion for default against Larry, Sherida, and McVey Used Cars.

¶3 The record shows that, with the default motion, the state filed a return of service on Larry McVey made on November 3, 2020, several months after his death. The return was sent to one Pam Snider, at a post office box in Tecumseh, Oklahoma, and the certificate of service had a handwritten notation reading "estate" next to McVey's name and another stating that service was "c/o Attorney Pam Snider." The default motion stated that Pam Snider had agreed to accept service on behalf of "the estate of Larry McVey." It also stated that another attorney who shared the same office, David McKenzie, had in turn agreed to accept service on behalf of Sherida McVey. No reply was received and neither attorney entered an appearance in this case.

¶4 The court set a hearing on the default motion for April 29, 2021, which was continued to July 27. By this time the state evidently recognized that Pam Snider was not representing the estate and notice of this new hearing date was sent to wife Sherida McVey and the "Larry McVey estate c/o Sherida McVey." On July 27, 2021, the court granted a decree of forfeiture, noting that no party had appeared and neither of the named attorneys was currently representing the parties. 

¶5 In November 2021, a probate of McVey's estate was opened and Larry's daughter, Sherral McVea, was appointed personal representative. As personal representative, Sherral McVea filed a motion to vacate the default as to the interest of Larry McVey on the grounds that a personal representative was the only party authorized by law to represent the interests of the deceased Larry McVey, and no personal representative was ever appointed or had been served with notice in this case. The court denied this motion, and the personal representative now appeals.

STANDARD OF REVIEW

¶6 The correct standard of review employed upon a motion to vacate is whether sound discretion was exercised to vacate the earlier decision. See Schepp v. Hess, 1989 OK 28770 P.2d 34Yery v. Yery, 1981 OK 46629 P.2d 357

ANALYSIS

¶7 The appellant's prime argument is that it was mandatory for a personal representative to receive notice and an opportunity to contest the forfeiture because defenses that might have been available to the deceased can only be raised by a representative. No personal representative was appointed or noticed in this case. The state argues that attorney Pam Snider "represented the estate" at the time the default forfeiture motion was filed, that she was served with a copy of the motion, and that it also gave attorney Greg Wilson notice of the hearing. The state also noticed wife Sherida McVey of the hearing as an individual and as a purported heir of the estate "out of precaution." Hence, the state argues notice was given to all necessary parties and the default was therefore proper.

¶8 We note that the docket sheet shows no entry by an attorney in this case for either the McVeys or a personal representative until after the default judgment. Before considering the legitimacy of this fractured chain of notice, which is evidently based upon conversations between the state and certain local attorneys, we must address the primary question of whether the state could continue forfeiture proceedings by serving the "estate" with notice, or whether a personal representative was a necessary and proper party to receive notice.

¶9 In a matter of general litigation, the answer is relatively clear. "Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases and in the same courts in which the same might have been maintained by or against their respective testators and intestates." 58 O.S. § 252may be maintained"?caselaw is clear that, in cases where a cause of action survives the death of the defendant, the case cannot proceed without a personal representative, Stone v. Estate of Sigman, 1998 OK CIV APP 173970 P.2d 118512 O.S. § 2017

¶10 A civil forfeiture action is generally remedial in nature. See United States v. Ursery, 518 U.S. 267, 278, 288--92, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (analyzing congressional intent and the nature of 21 U.S.C. § 881 forfeitures for double jeopardy purposes); United States v. Chambers, 121 F.3d 710, 1997 WL 441801, at *6 (6th Cir.1997) (unpublished table decision) ("[A] true in rem civil forfeiture is not an additional penalty for the commission of a criminal act, but rather is a separate civil sanction, remedial in nature."). A remedial civil forfeiture therefore does not abate with death. United States v. Land, Winston Cnty., 221 F.3d 1194, 1199 (11th Cir. 2000).

¶11 Defenses that the owner of the property could have raised do not expire at death either. Rather, "[t]he claim of an administrator of a claimant's estate derives from the deceased claimant," and the administrator "can assert defenses that would have been available to the deceased claimant." United States v. 133 Firearms with 36 Rounds of Ammunition, No. 2:08--cv--1084, 2012 WL 511287, at *8 (S.D.Ohio Feb.15, 2012) (citing United States v. Real Prop. Located at 265 Falcon Rd., Civil NO. 08--700--JPG, 2009 WL 1940457 at *6 (S.D.Ill. July 7, 2009); Hopper v. Nicholas, 140 N.E. 186, 189 (1922); Kelley v. Buckley, 950 N.E.2d 997, 1013 (Ohio App. 8th Dist.2011)). However, because "the claim of the estate is purely derivative of any claim or defense of the deceased, the estate cannot raise defenses which might be available to individuals who stand to inherit from the estate." United States v. $129,374 in U.S. Currency, 769 F.2d 583, 587 (9th Cir.(1985)). As such, it is clear that two groups of claims and defenses against forfeiture arise in cases such as we have here?claims the deceased could have raised, which are exclusive to the personal representative?and claims that other parties could have raised. In this case, some potential "other parties" appear to have been notified, but no representative was standing in the shoes of the deceased.

¶12 The normal procedure when a defendant dies while a claim is pending is governed by three Oklahoma statutes. If the decedent died testate, and the plaintiff has an "interest in the estate," the plaintiff may open a probate pursuant to 58 O.S. § 2258 O.S. § 12212 O.S. § 2025

¶13 Case law interpreting § 2025 is sparce and there is none involving a civil forfeiture. Because § 2025(A)(1) is taken from Rule 25(a)(1) of the Federal Rules of Civil Procedure, however, we "may look to the federal courts for guidance in interpretation and application of [§ 2025]." Campbell v. Campbell, 1994 OK 84878 P.2d 1037See United States v. Seventy-Nine Thousand, One Hundred Ten Dollars ($79,110.00) in United States Currency, 1:14-CV-274, 2017 WL 1106363, at *3 (S.D. Ohio Mar. 24, 2017); United States v. 256,276.00 in U.S. Currency, 2:21-CV-07310-CAS (KSX), 2024 WL 4467593, at *1 (C.D. Cal. May 17, 2024).

¶14 In this case, the state did not open a probate proceeding or follow the procedure mandated by § 2025. The law is clear that the personal representative is the only person entitled to bring defenses to forfeiture that would have been available to the original owner of the seized property. As such, no party with the ability to raise these defenses was notified of the hearing, and default could not have disposed of these defenses.

¶15 The state next argues that, even if a necessary party was not noticed, the default should be affirmed because there were no viable defenses the deceased, and hence the personal representative, could have brought. The state proposes that the deceased could have availed himself only of the defenses stated in 63 O.S. § 2-506

¶16 Section 2-506(H), however, concerns the defenses that an "innocent owner" may bring. These defenses may be brought, as the name clearly implies, by a non-target who claims to be the actual owner of the property and claims they had no "knowledge or reason to believe that the property was being, or was to be, used for the [illegal] purpose charged." Id. This statutory section does not concern the defenses that the target of a seizure may bring, however.

¶17 Alleged owners who are the target of the seizure, such as the deceased here, may bring other defenses than those stated in § 2-506(H). 63 O.S. § 2-503

¶18 The state next argues that it acted based on a good faith belief that giving notice to an attorney whom the state reasonably believed was representing "the estate" was legally sufficient in this case. 

CONCLUSION

¶19 A personal representative is entitled to notice when a decedent's property is subject to a forfeiture proceeding. In the absence of a personal representative, the state must avail itself of the procedure set forth in 12 O.S. § 202563 O.S. § 2-506

¶20 REVERSED AND REMANDED.

WISEMAN, P. J., and FISCHER, J., concur.

FOOTNOTES

58 O.S. § 11

Underwood v. Pinson, 1953 OK 337263 P.2d 418In re Estate of Bleeker, 2007 OK 68168 P.3d 774Weeks v. Cessna Aircraft Company, 1994 OK CIV APP 171895 P.2d 731Matter of Estate of Williams, 2023 OK 103538 P.3d 176Ransom v. Brennan, 437 F.2d 513 (5th Cir.1971), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971) (construing the federal counterpart to 12 O.S. § 2025

United States v. One 1962 Aero Twin Commander 500B, Tail No. N37CK, Serial No. 500A-1251-76, Russell Robinson, 24-1277, 2025 WL 25853, at *1 (3d Cir. Jan. 3, 2025). An innocent owner litigates the affirmative defense provided by 18 U.S.C. § 983(d)(1) that property that is otherwise properly subject to forfeiture should, nonetheless, be returned because the actual owner had no knowledge or reason to believe that the property was being, or was to be, used for the purpose charged. United States v. Ferro, 681 F.3d 1105, 1109 (9th Cir. 2012).

Compare State ex rel. Campbell v. Eighteen Thousand & Two Hundred Thirty-Five Dollars in U.S. Currency, 2008 OK 32184 P.3d 1078with, State ex rel. Dep't of Pub. Safety v. 1985 GMC Pickup, Serial No. 1GTBS14EOF2525894, OK Tag No. ZPE852, 1995 OK 75898 P.2d 1280

Response Brief, 13. By the time of hearing, the state knew that neither David McKenzie nor Pam Snider was representing the estate. Another attorney, Greg Wilson, stated that he was going to enter an appearance in the case. See R. 112 (e-mail stating that "we are going to make an appearance" but that a continuance was needed because Wilson was going to be in trial the whole day of the hearing). The day before the hearing, the state refused to agree to a continuance, and the docket sheet shows that the state also filed a motion to disqualify Wilson from appearing. It is difficult to see how these acts generated a "good faith belief" that Wilson would appear.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105