Barbara A. WILLIAMS, Appellant,

v.

Melinda McCaul MULVIHILL, Personal Representative of the Estate of Dwight J. Wilson, Deceased, Appellee.

No. 79453.

Supreme Court of Oklahoma.

Jan. 26, 1993.

Robert G. Shoemaker, Kerr, Irvine, Rhodes & Ables, Oklahoma City, for appellant.

Henry A. Meyer, III, Hieronymus, Hodgden & Meyer, Harold G. Lowrey, Woodward, for appellee.

OPALA, Justice.

Two questions are dispositive of appellant's [Williams'] quest for predecisional procedural relief: (1) Shall this proceeding for certiorari to review a certified interlocutory order in probate be recast into an appeal from mid-probate judgment?[1] and (2) Shall this court vacate or modify the trial court's requirement for a *$100,000.00 bond* to suspend the clerk's disbursement of the oil and gas proceeds now on deposit in his office?[2]

---

1. We do not reach appellant's alternative request that we treat the trial court's decision as an "interlocutory order appealable by right." If we were to accede, her appeal would be *untimely* because it was brought here more than thirty days after the order's *rendition. See* 12 O.S. 1991 § 993; Rules 1.40 and 1.61, Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15, App. 2.

2. The trial judge required that Williams give a $100,000.00 undertaking to stay his order declaring the sale a nullity. Williams did not file a bond; she now seeks an order that would allow her to suspend the decision's effectiveness *sans* bond.

■ We answer both questions in the affirmative. The decision before us is a true "judgment" within the meaning of § 721(10) [3]—i.e., an end-of-the-line disposition of all issues *litigated and litigable* in probate between Williams *qua* purchaser from the estate and its executrix.[4] It is hence at once reviewable as *final*.[5] Since it does not appear likely that the estate's loss from delayed disbursement of the proceeds *in custodia legis* [6] would aggregate

**3.** The pertinent terms of 58 O.S.1991 § 721(10) are:

"An appeal may be taken from the following *judgments* ...

10. From any other *judgment ... in a probate cause ... affecting a substantial right.*" [Emphasis supplied.]

A judgment is defined as "*the final determination of the rights of the parties* in an action." 12 O.S.1991 § 681. For the terms of 12 O.S.1991 § 681, *see infra* note 36.

**4.** The pertinent terms of the judgment are:

"* * * 4. [Williams'] Motion for Summary Judgment should be denied for the reason that the *limitation provided by 58 Oklahoma Statutes Section 493 is not applicable* to the purported sale and assignment in this case. No previous return of sale was filed, no notice was given and no order confirming the sale has been entered. *No equitable title or interest passed to [Williams] since the purported sale was illegal;* [Williams] is not an innocent purchaser since she is presumed to have known that the law prohibited her from purchasing property from an estate of which her husband was co-executor. This was never a valid sale but merely a fraud upon the estate. Mr. Williams just transferred the property and Mrs. Williams started taking the money without any valid sale. This was an illegal transaction, an illegal attempt at fraud upon the estate.

"5. *The purported sale and assignment of the oil and gas leasehold described above should be vacated, set aside and held for naught.*

"6. As a result of the purported assignment of the oil and gas leasehold estate, Natural Gas paid Respondent at least *Forty-seven Thousand Dollars ($47,000) of revenue from the sale of gas from the oil and gas leasehold estate;* that on or about May 25, 1989, Natural Gas suspended further payment of revenue and is now holding *suspended revenue attributable to the oil and gas leasehold estate of approximately Ninety-three Thousand Dollars ($93,000),* less expenses of operations paid by Natural Gas, if any.

"7. Both [Williams] and Natural Gas are persons who have been entrusted with part of the estate of the decedent and that in accordance with 58 Oklahoma Statutes Section 295, each of them should be required to *render a full account,* under oath, of any monies or other property belonging to the estate which have come into their possession in trust for the Executrix.

"8. Natural Gas should be ordered to *pay the money it now holds in suspense, together with*

anticipated *monthly income, into the Court Clerk,* until further order of the Court. * * *

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the purported sale of the oil and gas leasehold estate described in paragraph 3 above and the assignment thereof recorded in Book 979 at Page 195 in the records of Woodward County, *be and they are hereby vacated, set aside and held for naught.*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Barbara A. Williams appear before this Court on the 21st day of April, 1992, at 9:30 o'clock a.m. for the purpose of *rendering a full account,* on oath, of all monies, chattels, bonds, account, or other property or papers belonging to the Estate of Dwight J. Wilson, deceased, which have come to her possession, including specifically all revenue and other income which she received from March 25, 1986, to this date from or on account of the oil and gas leasehold estate specifically described in paragraph 3 above, unless she renders a written accounting under oath prior to that date. * * *

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that within ten (10) days after the date of this order Natural Gas Pipeline Company of America shall *pay all of the funds attributable to the oil and gas leasehold estate described in paragraph 3 above which it now holds and all future revenue attributable to the leasehold, to the Court Clerk.*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event of an appeal from this order, *the amount of the supersedeas bond is hereby fixed at One Hundred Thousand Dollars ($100,000).*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above and foregoing Order of the Court, in the event said Order is not deemed to be a final and appealable Order, is hereby *certified for immediate interlocutory appeal* under the provisions of Oklahoma Statutes Title 12 Section 993 (1991) as to all findings and orders made herein." [Emphasis supplied.]

**5.** This proceeding, brought here April 17, 1992—within *thirty days* of the judgment's *March 31, 1992 filing*—is *timely.* 12 O.S.1991 § 990A. The pertinent terms of § 990A are:

"A. An appeal to the Supreme Court may be commenced by filing a petition in error with the Clerk of the Supreme Court *within thirty (30) days from the date the final order or judgment is filed....*" [Emphasis supplied.]

**6.** The Latin phrase "*in custodia legis*" means "in the custody or keeping of the law." Black's Law Dictionary, p. 691 (5th Ed.1979).

$100,000.00, the penal sum set by the trial court appears excessive. The order requiring an undertaking in that amount must be vacated; *if Williams still desires to postpone the funds' disbursement pending appeal, she must post a bond conditioned on payment of damages for delay[7] in some reasonable penal sum to be determined by the trial judge.*

# I

## A.

### CRITICAL FACTS

Williams' husband [husband] and Melinda McCaul Mulvihill [Mulvihill] were *coexecutors* of decedent's will. For $6,600.00 the husband assigned to Williams on March 25, 1986 an *estate asset*—an oil and gas lease in Woodward County. Although a facsimile of Mulvihill's signature appears on the recorded assignment, the parties stipulated that *she never signed the document. Neither a return nor a confirmation of the sale in question had ever been filed in the probate case.*

Mulvihill first brought suit to quiet the estate's title in the Woodward County lease. That action was still pending when the husband resigned as co-executor, leaving Mulvihill as the estate's only fiduciary. She then sought *in probate* an order declaring the *undocumented and uncon-*

*firmed* sale to Williams a nullity; later she dismissed her quiet title action.

## B.

### THE PROCEEDINGS IN PROBATE

Mulvihill urged below that as co-executor she did *not* authorize the husband's sale of the oil and gas lease to Williams. She contended the transfer was prohibited by the terms of 58 O.S.1981 § 496,[8] which bar an executor's wife from purchasing the estate's assets.[9] Williams, a stranger to the estate, urged that Mulvihill had known about the sale for a long time and her attempt to set it aside was time-barred.[10]

The trial judge settled the statute of limitations question in the estate's favor and declared the assignment's transfer to Williams a nullity.[11] He then (1) ordered Williams to give an accounting of the collected oil and gas proceeds, (2) found that Natural Gas Pipeline Company of America was holding some proceeds from the purchased assignment, (3) ordered *an accounting* and *payment into court* of funds held by the pipeline company and (4) required *Williams to give a $100,000.00 bond* to stay his decision declaring the sale to her a nullity.

Williams brought an appeal by filing a timely petition in error.[12] She later changed her quest for relief to one for certiorari review of a certified interlocutory

---

**7.** Allowance of *damages for delay,* or *moratory damages,* is committed to the court's *sound discretion* upon due consideration of the *equities* present in the case. *Creason v. Perry,* Okl., 801 P.2d 715, 716 (1990); *E.B. Jones Const. Co. v. City & County of Denver,* 717 P.2d 1009, 1015 (Colo.App.1986).

*Moratory damages in the case under review would consist of the estate's loss, if any, from the delayed disbursement of the oil and gas proceeds, less the amount of collected interest.*

**8.** The terms of 58 O.S.1991 § 496 are:

"No executor or administrator must *directly or indirectly,* purchase any property of the estate he represents, nor must he be *interested in any sale."* [Emphasis supplied.]

**9.** *Chastain v. Pender,* 52 Okl. 133, 152 P. 833, 834 (1915).

**10.** Williams sought summary adjudication on the estate's claim to the oil and gas lease as *time-barred.* 58 O.S.1991 § 493. The terms of § 493 are:

"*No action* for the recovery of any *estate sold by an executor or administrator, under the provisions of this chapter,* can be maintained by any heirs, or other persons claiming under the decedent, *unless it be commenced within two (2) years next after the sale.* An action to set aside the sale on the ground of *fraud* may be instituted and maintained at any time *within two (2) years from the discovery of the fraud."* [Emphasis provided.]

**11.** The proceeding was submitted below upon *stipulated facts as well as the testimony of two witnesses.* The parties are doubtless *mistaken* when they represent the decision as *a summary adjudication.*

**12.** *See supra* note 5.

order.[13] She now seeks leave to recast the proceeding into an appeal from final mid-probate judgment—the corrective process she had commenced originally. She also requests relief from the *nisi prius* requirement that she give an undertaking. Mulvihill *admits the order before us is reviewable as final,* but *objects* vigorously to any stay *sans* the $100,000.00 bond.

## II

### A.

BECAUSE WILLIAMS IS A STRANGER TO THE ESTATE, THE ONLY IN-PROBATE ISSUE LITIGATED OR LITIGABLE BETWEEN HER AND THE ESTATE IS THE ESTATE'S RIGHT TO THE OIL AND GAS LEASE AND HER INTEREST, IF ANY, IN THE LEASE ASSIGNMENT

■ Probate is a statutory proceeding.[14] Before the Judicial Article of the Oklahoma Constitution [15] and the present § 91.1 [16] became effective on January 13, 1969, the remedial track for probate had its point of inception in the since-defunct county court.[17] Although probate *now* begins in

district court, *interdocket remedial boundaries survive. The mainstream probate issues and procedural stages remain the same. These are confined to: (1) ascertaining whether decedent died testate or intestate, (2) if testate, what testamentary disposition, if any, may be admitted to probate, (3) the administration of the estate's assets and (4) the final account and distribution.*[18]

■ Probate judicature is *limited* in scope. Its remedial range extends to accommodate only *some* disputes that may arise in the course of an administration between a *total stranger to the estate* and *its executor. A purchaser's clouded title in an asset secured from the estate without return or confirmation of sale lies within the permissible scope of probate inquiry.* William's claim to the estate's lease asset *derived from a judicial act in probate which remained unconsummated* when challenged by the executrix' quest for the transfer's vacation. *In pre-confirmation stages the cloud over ownership of the lease was hence litigable in probate.*[19]

---

**13.** William's counsel asked the trial judge whether the judgment would be appealable. Although he stated that it would, he also *certified the decision for immediate review anterior to judgment.* For the pertinent terms of the judgment, *see supra* note 4.

**14.** *Estate of Kizziar,* Okl., 554 P.2d 791, 792 (1976). *See* 12 O.S.1991 § 2001, whose pertinent terms provide:

"*The Oklahoma Pleading Code governs the procedure in the district courts of Oklahoma in all suits of a civil nature* whether cognizable as cases at law or in equity *except where a statute specifies a different procedure....*" [Emphasis provided.]

The notion of *multiple procedural tracks for some classes of district court proceedings* which cannot be accommodated by the Pleading Code is *not new* to the body of our adjective law. *See, e.g.,* the Uniform Adoption Act, 10 O.S.1991 §§ 60.1 *et seq.;* the provisions of 10 O.S.1991 §§ 1101 *et seq.,* commonly known as the "Juvenile Code" or "Children's Code;" statutes governing filiation proceedings, 10 O.S.1991 §§ 70 *et seq.;* condemnation proceedings for highways, 69 O.S.1991 § 1708; and condemnation proceedings for railroads, 66 O.S.1991 §§ 51 *et seq.;* and of course, *probate procedure,* 58 O.S. 1991 §§ 1 *et seq. Board of Law Library Trustees v. State,* Okl., 825 P.2d 1285, 1288 n. 11 (1992).

**15.** Art. 7, Okl. Const. Article 7 was ratified in 1907. Its repeal and the enactment of what is now Article 7 was proposed by Laws 1967, p. 698, H.J.R. No. 508 and adopted at election July 11, 1967. The pertinent terms of Article 7, § 1, Okl. Const., are:

"The *judicial power of this State shall be vested in* ... a Supreme Court [and] ... *District Courts....*" [Emphasis supplied.]

**16.** 20 O.S.1991 § 91.1. Adopted *verbatim* from Laws, 1968, c. 162, § 1, eff. Jan. 13, 1969, its pertinent terms are:

"The *District Courts* of the State of Oklahoma are the *successors to the jurisdiction of* all other courts, including ... *the County Courts....*" [Emphasis supplied.]

**17.** *Kizziar, supra* note 14 at 792.

**18.** *See* the probate procedure, 58 O.S.1991 §§ 1 *et seq.*

**19.** Strangers may not press issues *outside probate's remedial range.* For example, although disputes over title between the estate and its heirs may be adjudicated within the ambit of a probate proceeding, *the remedy of a stranger to the estate to recover property in the estate's possession or to assert title to that property is in an*

■ The trial judge decided that (a) Mulvihill's quest for vacation of *the purchased assignment* was not time-barred and (b) the estate's sale to Williams was a nullity.[20] He also ordered Williams to render an *in-probate accounting* to be conducted under the provisions of 58 O.S.1991 § 295.[21] Section 295's remedial range reaches *no farther* than to facilitate *discovery of estate assets. Although the accounting phase*[22] *may still remain inconclusive, its pendency does not adversely affect the finality status of the order tendered here for our review.* The cited section is *no* authority for an in-probate *judgment against a stranger like Williams for the recovery of unaccounted-for money or for the return of property acquired at an infirm or questionable sale.*[23] Rather, the estate's recapture of income—generated by the now-vacated assignment and collected by Williams before the assignment's purchase came to be contested—presents an *extra-probate controversy.*[24] When the trial judge upheld the estate's claim to the clouded, yet-unconfirmed assignment and declared the purchaser's acquired interest a nullity, *the only contest between Williams and Mulvihill that could be litigated and was litigable in probate* stood *completely terminated.*

### B.

### THE *NISI PRIUS* DECLARATION THAT THE SALE TO WILLIAMS IS A NULLITY IS A TRUE "JUDGMENT" IN PROBATE WHICH RESOLVES ISSUES SEPARATE FROM THE PROBATE'S MAINSTREAM; IT IS ON A FINALITY FOOTING EQUAL TO THAT OF A DECREE OF DISTRIBUTION

■ Only *parties* interested in the estate may seek corrective relief from the final decree of distribution.[25] Williams is neither a fiduciary, an heir, nor a beneficiary under the will. *Her only interest in this probate consists of a claim to the*

---

ordinary *action.* This is so because a probate's remedial range does not encompass quiet title relief to a stranger. *Kizziar, supra* note 14 at 792–793.

Mulvihill sought to cut off a stranger's interest in the assignment. *Big Four Petroleum Co. v. Quirk,* Okl., 755 P.2d 632, 634 (1988) (an executor's transfer of an estate asset, not yet confirmed, can confer an equitable interest in the purchaser). This would *ordinarily* require a quiet title action. But here it was a proper issue because *the undocumented and unconfirmed sale had not yet been legally consummated or completed by confirmation.*

**20.** For the pertinent terms of the *judgment, see supra* note 4.

**21.** The pertinent terms of 58 O.S.1991 § 295 are: "The judge of the district court, upon the complaint, on oath, of any executory or administrator, may cite any person who has been entrusted with any part of the estate of the decedent, *to appear before such court, and require him to render a full account, on oath, of any monies, goods, chattels, bonds, accounts, or other property or papers belonging to the estate* which have come to his possession in trust for the executor or administrator, and of the proceedings thereon; ..." [Emphasis provided.]

**22.** When this proceeding came here, the *court-ordered accounting* had not yet been *completely accomplished.* Later Williams filed a sworn statement of her income from the purchased

assignment together with her expenses. We do not know whether further in-probate accounting steps are contemplated; if so, *they would stand limited to mere discovery.*

**23.** *In re Cline's Estate,* 169 Okl. 565, 38 P.2d 30, 31 (1934).

**24.** An *extra-probate issue or controversy cannot be litigated within a probate's restrictive remedial range.* It lies beyond the inter-docket boundary that separates the various remedial tracks within the district court's cognizance. 20 O.S. 1991 § 91.2. *See supra* notes 14 and 19.

**25.** 58 O.S.1991 § 554. The terms of § 554 are: "On the day appointed, or any subsequent day to which the hearing may be postponed by the court, *any person interested in the estate may appear and file his exceptions in writing to the account, and contest the same.*" [Emphasis supplied.] A person who simply *claims adversely to the estate* is *not* a "person *interested*" in the estate. He is neither (a) competent to *object to an accounting* in the probate nor (b) *bound by a probate order* settling the account. *In re Hart's Estate,* 51 Cal.2d 819, 337 P.2d 73, 76–77 (1959). On the other hand, *heirs, devisees, legatees,* and in some instances *creditors* would be among those *"interested"* in the estate. For the distinction between *"parties"* to probate and merely *"interested parties,"* see *Matter of Estate of Goyne,* Okl., 733 P.2d 391, 394–395 (1987).

*purchased assignment. The probate order she tenders for corrective relief (a) declares that the sale made to her is a nullity, (b) extinguishes William's inchoate title and (c) severs her only legal nexus with the estate and its assets.* If we were to conclude that the sale's *vacation constitutes* an *interlocutory* order appealable by right, governed by 58 O.S.1991 § 721(5),[26] Williams would have to be afforded *another appeal* from a later end-of-the-line (terminal) disposition in probate.[27] This would lead to an absurdity. Williams has *no interest in the estate that would allow her to challenge the final accounting or provide her another chance for review. Her appeal, if at all, must lie from this mid-probate order which has all the attributes of a true "judgment."*[28] It *resolves a controversy that is separate and apart from the probate's mainstream.*

The trial judge's reiu~al ~o ~ ''d?te Williams' purchase and his vacation of the "returnless" and unconfirmed transfer by

assignment from the estate did indeed give birth to a true adverse judgment within the meaning of § 721(10).[29] In *Bowdry v. Stitzel–Weller Distillery*[30] the highest bidder on some personal property at an estate sale sought appellate review of the trial court's confirmation of the sale made to a lower bidder. We there recognized the order confirming the sale to the lower bidder as a "judgment" governed by § 721(10).[31] *The same recognition must be accorded today to the judgment here for review; it is clearly a classic § 721(10) judgment.*

The intimation to be gleaned from some extant case law to the effect that the *only final order* in probate is the *decree of distribution* cannot pass muster under a careful re-examination of § 721(10). To the extent that Rule 1.10, Rules of Appellate Procedure in Civil Cases,[32] and extant jurisprudence—such as *Estate of Griffin*[33]—may suggest that *a decree of distribution constitutes the only appealable final order in probate,* the notion, which no longer can meet our approval, is hereby

26. Under the terms of 58 O.S.1991 § 721(5), an appeal may be taken from an order "... *[a]gainst or in favor of directing the partition, sale or conveyance of real property....*" [Emphasis supplied.]

27. The terms of 12 O.S.1991 § 1006 *are not applicable to probate proceedings.* That section's standards for gauging finality require that *everyone's claim* in the action be decided before an appeal may be prosecuted. The pertinent terms of 12 O.S.1991 § 1006 are:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of judgment. *In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action....*" [Emphasis provided.]

28. In *Estate of Nation,* Okl., 834 P.2d 442 (1992), the appellants, claiming to be pretermitted heirs, sought to appeal from a *pre-decree denial of their status.* The court concluded that their appeal was *untimely brought from a temporary pre-decree order.* Because *qua* heirs they could

*renew their claim* and *again appeal* from its *adverse disposition by the decree of distribution,* the court dismissed their appeal without prejudice to their *reurging* the quest for corrective relief in a timely *appeal from final decree.*

In contrast to *Nation,* the appellant here [Williams] is a *stranger* to the estate. She has no interest in it and hence no standing to appeal from the decree of distribution. *A timely appeal from the mid-probate order which extinguishes her entire claimed interest in the purchased assignment is her only appellate remedy.*

29. *Big Four, supra* note 19 at 634. For the terms of 58 O.S.1991 § 721(10), *see supra* note 3.

30. 200 Okl. 213, 192 P.2d 279, 281 (1948).

31. For the terms of 58 O.S.1991 § 721(10), *see supra* note 3. The provisions of 58 O.S.1941 § 721(8) were reenacted *verbatim* in what is now § 721(10).

32. The pertinent terms of Rule 1.10, Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15, App. 2 are:
" * * * A judgment includes any judgment or *final order* appealable under the provisions of:
\* \* \* \* \* \*
(9) *58 O.S.1991 § 721 Subdiv. (7)* \* \* \*" [Emphasis supplied.]

33. Okl., 554 P.2d 785, 787 (1976).

rejected. *A § 721(10)* in-probate judgment is *appealable as final by definition.*[34] In the § 721(10) context, the term "judgment" must be given the same meaning[35] as that which it has in § 681.[36] For today's § 721(10) judgment before us we adopt the § 681[37] definition. The order declaring Williams' purchase of the assignment to be a nullity deserves the same appealability status as that which is accorded to judgments by § *952(a).*[38]

## III

## IF WILLIAMS DESIRES TO POSTPONE DISBURSEMENT OF THE FUNDS *IN CUSTODIA LEGIS,* SHE MUST POST A BOND CONDITIONED ON HER PAYMENT OF DAMAGES FOR DELAY IN SOME REASONABLE PENAL SUM TO BE DETERMINED BY THE TRIAL JUDGE

Approximately $90,000.00 in lease proceeds is now on deposit in the court clerk's custody. The deposit consists of all runs which have accrued since Natural Gas Pipeline Company of America received notice that the assignment's sale to Williams was in contest.[39] The trial judge ordered Williams to give a $100,000.00 undertaking · to stay disbursement of these funds to the estate. Since no bond has been posted, the decision that the sale is a nullity remains effective; no impediment now bars the funds' delivery to the executrix.

Williams urges that we should defer the payout pending appeal because the estate has not recovered a personal money judgment against her[40] and an immediate disbursement would irrevocably damage her interest in the deposit.

Mulvihill contends that (1) if no bond is posted, the beneficiaries will lose interest on the proceeds held by the clerk,[41] (2) *the bond's purpose is to secure the principal and interest during an appeal* and (3) the estate should not have to bear the risk of losing the deposit.

■■■ A mandatory stay of execution authorized by statute for certain judgments that are defined in the four subdivisions of 12 O.S.1991 § 968.1 is *not* applicable to the case under review.[42] Rather, William's

---

**34.** *See* 12 O.S.1991 § 952(a). The pertinent terms of § 952(a) are:
"The Supreme Court may reverse, vacate or modify *judgments of the district court* for errors appearing on the record, and in the reversal of such judgment may reverse, vacate or modify any intermediate order involving the merits of the action, *or any portion thereof.*" [Emphasis supplied.]

**35.** The terms of 25 O.S.1991 § 2 are:
"Whenever the meaning of a word or phrase is *defined in any statute,* such definition is *applicable to the same word or phrase wherever it occurs,* except where a contrary intention plainly appears." [Emphasis supplied.]

**36.** The terms of 12 O.S.1991 § 681 are:
"A judgment is the *final* determination of the rights of the parties in an action." [Emphasis supplied.]

**37.** 12 O.S.1991 § 681, *supra* note 36.

**38.** 12 O.S.1991 § 952(a), *supra* note 34.

**39.** *Before* Williams' right to the runs from the Woodward County lease came to be *questioned,* she had *received approximately $47,000.00* in income from her purchased assignment. *Her right to these runs is not an issue here.*

**40.** Williams' contention that the deposit may not be distributed because the Estate has *no*

*personal money judgment against her is unsupported by any authority* and is *unpersuasive.* The money *in custodia legis* was paid directly to the court clerk for the Estate's benefit *after* Williams' right to the purchased assignment came to be *extinguished* and *she was hence no longer entitled to lease proceeds under her vacated assignment.*

**41.** Mulvihill contends the present facts are analogous to those in *M.E. Trapp Associated v. Tankersley,* 206 Okl. 118, 240 P.2d 1091, 1094–1095 (1952), where Tankersley was adjudged to be entitled to some $91,000 and Trapp to approximately $86,000 in a joint fund. Trapp appealed and *suspended the effectiveness of the judgment by posting a supersedeas bond.* When the judgment was *affirmed, Tankersley was allowed interest* on his part of the principal for the *time accrued since execution had been stayed by Trapp's supersedeas.*

**42.** The pertinent terms of 12 O.S.1991 § 968.1 are:
"No proceeding to reverse, vacate or modify any judgment or final order rendered in the district court ... *shall operate to stay execution, unless* the clerk of the court in which such judgment or final order shall have been rendered, *shall take a written undertaking,* to be executed on the part of the plaintiff in

quest for a stay is governed by § 974.1[43] The latter section gives the trial court *discretionary* powers to prescribe the conditions for suspending a judgment's enforcement pending appeal.[44]

The estate now holds an unclouded title to the vacated assignment; it is clearly entitled to the immediate use of the proceeds on deposit in the court clerk's office. Yet in this posture, a judicially postponed disbursement would not be an abuse of discretion. Since the estate's loss from delayed payout may be mitigated by an order that would authorize the court clerk to place the entire deposit in an interest-bearing account or to invest the fund in cash-equivalent securities, it does not appear likely that damages for delay would aggregate $100,000.00. We hence vacate that part of the *nisi prius* order which calls for the high penalty limit on the bond. *If Williams desires to stay the vacation order's effect, she must post an undertaking conditioned for payment of damages for delay in some reasonable penal sum to be determined by the trial judge.*[45] The trial court must set both the amount of the penalty on the bond Williams is to give and the time to post her undertaking.

If Williams gives an undertaking, the trial judge shall then order the funds on deposit placed either in an interest-bearing account or in cash-equivalent securities. In the event the bond is *not* posted, the trial court may order the fund's forthwith disbursement to the executrix.

## SUMMARY

The decision here for review is a classic mid-probate "judgment" within the meaning of § 721(10).[46] It is an end-of-the-line disposition of all issues litigated and litigable in probate between Williams and the estate. For Williams—qua purchaser of the now vacated assignment—the decision *is as "final" as the decree of distribution would be for the heirs or beneficiaries of an estate.* It is at once *appealable as final.* This proceeding is hence ordered recast into an appeal from mid-probate judgment—*the appeal Williams had brought here originally by filing a timely petition in error.*

The trial court did not abuse its discretion by imposing conditions on postponing disbursement of the fund *in custodia legis* pending appeal, but *the penal sum set for the undertaking is too high.* The order requiring Williams to post a $100,000.00 bond is vacated with directions to reconsider the motion to stay in a manner not inconsistent with the directions given in this pronouncement.[47]

PROCEEDING ORDERED RECAST INTO AN APPEAL FROM MID–PROBATE JUDGMENT; ORDER REQUIRING WILLIAMS TO POST A $100,000.00 BOND IS VACATED WITH DIRECTIONS TO RECONSIDER THE STAY MOTION

error, to the adverse party *with one or more sufficient sureties*, as follows:
"1. When the judgment or final order sought to be reversed directs the payment of money * * *.
"2. When it directs the execution of a conveyance or other instrument * * *.
"3. When it directs the sale or delivery of possession of real property * * *.
"4. When it directs the assignment or delivery of documents * * *." [Emphasis supplied.]

**43.** The pertinent terms of 12 O.S.1991 § 974.1 are: "Execution of the judgment or final order of any judicial tribunal, other than those enumerated in this article, *may be stayed on such terms as may be prescribed by the court* or judge thereof, in which the proceedings in error are pending...." [Emphasis supplied.] *See Creason,* supra note 7 at 716. The trial court has

discretion to suspend the effectiveness of a judgment pending appeal. *Mapco v. Means,* Okl., 538 P.2d 593, 595 (1975).

**44.** *"Supersedeas"* differs from *"stay." Wilks v. Wilks,* Okl., 632 P.2d 759, 763 n. 12 (1981). The former denotes a *suspension of a judgment's effectiveness pursuant to an undertaking as a matter of statutory right* [12 O.S.1991 § 968.1, *supra* note 42]. The latter is governed by a *discretionary act of a trial or appellate court* [12 O.S.1991 § 974.1, *supra* note 43].

**45.** *Creason, supra* note 7 at 716. For our definition of *delay or moratory damages, see supra* note 7.

**46.** For the terms of 58 O.S.1991 § 721(10), *see supra* note 3.

**47.** *Creason, supra* note 7 at 716.

IN A MANNER NOT INCONSISTENT WITH THIS PRONOUNCEMENT'S DIRECTIONS.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, KAUGER and WATT, JJ., concur;

SUMMERS, J., concurs in result;

ALMA WILSON, J., dissents.