## LOT P. RAVENSCRAFT AND ELIZA RAVENSCRAFT V. JONATHAN H. PRATT, et al.

FACTS, *Showing a Cause of Action; Fraudulent Conversion of Partnership Property by One Partner; Statute of Limitations.* On February 18, 1857, and prior thereto, R., who resided in Ohio, and P., who resided in Kentucky, were partners in business in Ohio, Kentucky and Iowa. On that day, R. died, leaving his estate, free from debts and claims, to his widow and four children. On March 23, 1857, the widow was appointed administratrix in Ohio, and served until October 5, 1858, when, by marriage, her letters of administration were revoked. On March 22, 1867, N. was appointed administrator *de bonis non* in Ohio, and still continues to be the administrator. No other administrator or administratrix was appointed, either in Ohio or in any other state. In August, 1869, the widow died, leaving her estate, free from debts and claims, to her said four children. No administrator or administratrix was ever appointed for her estate. Nothing was done by the administratrix or administrator of R.'s estate, except that the administratrix made an inventory of the assets, had them appraised, and made an illegal and void agreement with P., giving to him the possession and control of said partnership property for eight years. P. retained the possession of all the partnership property up to July 16, 1857, when, in violation of said illegal contract, and in violation of law, he disposed of the same, converted the proceeds thereof to his own use, fled from his home in Kentucky, went to South America, and thence to Kansas. The interest of the estate in said partnership property was worth $13,393.96. P. has resided in Kansas ever since that time. He has never paid any portion of said $13,393.96, and the administratrix and administrator have failed and refused to sue him therefor, and the administrator still refuses so to do, and was therefore made a defendant in this action. Each of said four children is entitled to one-fourth of their father's and mother's estates. Two of them attained their majority within less than one year prior to the commencement of this action. These two are the plaintiffs in this action, and the other two and the administrator and P. are the defendants. The object of this action is, to recover from P. the plaintiffs' shares of the proceeds of said partnership property. *Held* — 1. That the plaintiffs may bring the action. 2. That the action is not barred by the statute of limitations.

### *Error from Miami District Court.*

ACTION brought by *Lot P. Ravenscraft* and another against *Jonathan H. Pratt* and three others, defendants, to recover the sum of $6,696.98, with interest from April 16, 1857.

The facts, pleadings and proceedings are sufficiently stated in the opinion.   At the October Term, 1877, the court below sustained a demurrer to the plaintiffs' amended petition, and this is the only ruling of which they here complain.

*W. M. Rice*, and *W. H. Browne*, for plaintiffs in error.

*H. H. Patten*, and *J. A. Hoag*, for defendant in error Jonathan H. Pratt.

The opinion of the court was delivered by

VALENTINE, J.: The court below sustained a demurrer to the amended petition of the plaintiffs, and this is the only ruling of which the plaintiffs, as plaintiffs in error, now complain.   Two questions are presented: 1. Does the petition show that the plaintiffs have ever had any cause of action against the defendants?   2. And if it does, then does it not also show that such cause of action is barred by the statute of limitations?   Jonathan H. Pratt is the principal defendant, the others being merely nominal defendants; hence, hereafter, when we speak of the defendant or defendants, we shall mean merely Jonathan H. Pratt.

The principal facts stated in the petition, are substantially as follows:

On February 18, 1857, and prior thereto, William H. Ravenscraft and said Jonathan H. Pratt were partners in the tanning and hide-and-leather business, at Kygerville, Gallia county, Ohio, at Liberty, Greenup county, Kentucky, and at Muscatine, Iowa.   Ravenscraft resided at Kygerville, and Pratt at Liberty.   On said February 18, 1857, Ravenscraft died, leaving a widow (who by law inherited one-third of his estate, real and personal) and four children (who by law inherited the other two-thirds of the estate equally), two of which children are now the plaintiffs in this action.   Ravenscraft left his estate free from all debts and claims; and his interest in said partnership business was worth at the time of his death, $13,393.96.   Pratt, for some months after Ravenscraft's death, continued in the possession of every-

thing connected with said partnership business. This would have been right, according to the allegations of the petition, notwithstanding the fact that Pratt was a non-resident of Ohio and Iowa, if he had held such possession merely for the purpose of closing up the partnership business, and of paying over to the heirs and distributees Ravenscraft's share of the proceeds, and had given bond, etc., and had acted under the orders of the probate court—none of which things he did, however. On March 23, 1857, America Ravenscraft, widow of William H. Ravenscraft, mother of said children, and a sister of Pratt, was appointed administratrix by the probate court of said Gallia county, Ohio. No administrator or administratrix was ever appointed in or for Kentucky or Iowa, and no administration of the estate was ever had in those states. The administratrix never did anything with reference to the estate except to make an inventory of the assets thereof, and to have such assets appraised, and to make with Pratt an illegal and void, and so far as he was concerned, a fraudulent contract, that he should retain the partnership property for over eight years, and until August 12, 1865—he to give her his promissory note for $13,393.96, and a mortgage to secure the same, and to pay her annually $1,000 for the use of the property, and at the expiration of the time, to wit, August 12, 1865, to pay said note or to deliver to her said partnership property, at her election. This contract was made on July 16, 1857, and was never approved by the probate court. Pratt paid no further attention to the contract, not even giving said note or mortgage, or any note or mortgage, but violated the contract in every respect. He immediately, in violation of the contract and of law, sold and disposed of all of said partnership property, converted the proceeds thereof to his own use, fled from his home in Kentucky, went to South America, and thence to Kansas. On October 5, 1858, said America Ravenscraft was married a second time, and this in law revoked her letters of administration. No person was appointed to take her place until March 22, 1867, when Samuel A. Nash was appointed ad-

ministrator *de bonis non* by the probate court of said Gallia
county.   He qualified, giving a bond of $500, but it does
not seem that he ever did or attempted to do anything as
administrator.   In August, 1869, said America Ravenscraft
died, leaving said four children as her only heirs and dis-
tributees.   Her estate was also left free from all debts and
claims.   No administrator or administratrix has ever been
appointed for her estate.   Pratt still resides in Kansas, and
still retains the proceeds of said partnership property.   Nash
still remains the administrator of Ravenscraft's estate in Ohio,
but he has always refused to collect said proceeds from Pratt,
and he refused to be a plaintiff in this suit, and was therefore
made a defendant.   Said four children are still living.   Two
of them refused to be plaintiffs in this suit, and they were
therefore made defendants.   The other two are the plaintiffs.
herein.   Each of said children was entitled by law to one-
fourth of two-thirds of their father's estate, and their mother
was entitled to the other third, and when she died, each of the
children being entitled to one-fourth of her estate, each became
entitled to one-fourth of her third of their father's estate, and
hence each is now entitled to one-fourth of the proceeds of
their father's interest in said partnership property; or in
other words, each is entitled to recover from the defendant
Pratt $3,348.49, or the two plaintiffs are entitled to recover
$6,696.98; and for this amount they have brought this action.
The plaintiffs were minors, and not acquainted with their
rights up to within one year before they commenced this
action.   Since this action was commenced, the time for the
appointment of an administrator for their father's estate in
Kentucky has expired.   This they allege in their last amended
petition.   This action was commenced October 2, 1876; the
last amended petition was filed September 4, 1877.

For the purposes of this case, we shall assume that the
cause of action constituting the basis of this action accrued
against Pratt when he sold said partnership property and
converted the proceeds thereof to his own use, and fled be-
yond the jurisdiction of the courts of Ohio, Kentucky and

Iowa. Possibly it accrued sooner. Possibly it accrued when he made said illegal and unauthorized contract with the administratrix. But certainly it accrued when he converted said proceeds to his own use, if it did not accrue sooner; for, after repudiating all his obligations to Ravenscraft's estate, and violating all his duties as a surviving partner, it could hardly be said that he was still such a continuing trustee for the estate, and for Ravenscraft's heirs and distributees, that no cause of action accrued against him. And such cause of action existed in Kansas very nearly as soon as it accrued in Ohio, Kentucky or Iowa; for the sale of the property, the conversion of the proceeds, the fleeing to South America, and the coming to Kansas, all transpired in rapid succession, and soon after July 16, 1857. But in whose favor did this cause of action accrue? The defendant says that if it ever accrued, it accrued in favor of the administratrix or administrator of the estate of William H. Ravenscraft, and never in favor of his heirs or distributees. Possibly this may be correct so far as the state of Ohio is concerned; but can it be correct with reference to Kentucky, Iowa or Kansas? Can it be correct even in Ohio? As the administratrix was a party to said illegal contract giving to Pratt the illegal custody and control of the partnership property for over eight years, and as both the administratrix and the administrator have continuously failed and refused to sue Pratt in any state, can it be correct even in Ohio that the cause of action accrued only in favor of the administratrix and administrator, and not in favor of the heirs and distributees? (See the cases of *The Southwestern Rld. Co. v. Thomason*, 40 Ga. 408; *Nutting v. Boardman*, 43 Ga. 598; also, 46 Ga. 34; and 57 Ga. 418.) Under these decisions, could not the heirs and distributees have sued Pratt even in Ohio, if they could have found him in that state — of course making the administratrix or administrator a party? But, passing over this question for the present, what were the rights, powers and duties of the administratrix and administrator? At the time that Pratt sold the partnership property in Ohio, and before he removed the

proceeds therefrom, it is probable that the administratrix might, in Ohio, have instituted a proceeding *in rem* against him for the recovery of the share of the estate in such proceeds. But even this remedy would have been of short duration, for Pratt did not permit the proceeds to remain long in Ohio. Probably she would not have had at any time any action *in personam* against him in Ohio, for it does not seem that he was personally there at any time after converting said proceeds. Presumably, she would not have had any action of any kind, either *in rem* or *in personam*, against him in any one of the other states; for it is well settled, that an administrator of one state cannot, by virtue of his appointment, or by virtue of the laws of such state, have any power or authority as an administrator in any other state. State laws have no extra-territorial force. In states where a foreign administrator is allowed to sue or be sued, it is by virtue of the laws of the state where the suit is brought, and not by virtue of the laws of the state where the foreign administrator is appointed. During the time that America Ravenscraft was administratrix, she could not have sued in Kansas, and, presumptively, she could not have sued in either Kentucky or Iowa; and from October 5, 1858, when her letters of administration were revoked, up to March 22, 1867, when Nash was appointed administrator, there was no administrator or administratrix to sue anywhere. When Nash was appointed administrator, he could have sued in Ohio, if he could have found either Pratt or any of his property there; but it does not seem that either Pratt or any of his property was ever in Ohio after Nash's appointment, in 1867; nor could Nash have sued in either Kentucky, Iowa or Kansas, up to October 31, 1868. But at that time an act of the legislature of Kansas took effect, permitting foreign executors and administrators to sue and be sued in Kansas. (Gen. Stat., 472, § 203.) Since that time, we suppose that Nash, the administrator, might have sued Pratt in Kansas for the interest of the estate in said proceeds, but he utterly failed and refused to do so; and, viewing the question from a

Kansas standpoint, he was under no legal obligation to do so, whatever may have been his moral duty in that respect, and whatever might be his legal duty viewed from an Ohio standpoint. No foreign state can impose legal obligations or legal duties upon administrators that will authorize them to interfere or intermeddle in the affairs of other states. The power of a state terminates with its boundaries, and its laws can have no extra-territorial force. Laws enacted for other jurisdictions are in reality no laws. They are *ultra vires*, illegal and void. Ohio could of course enact laws to permit Pratt to sue in Kansas, and might, perhaps, with reference solely to her own boundaries, impose a legal duty upon him to do so, for she could enact that he should do so, and then enact laws to fine him, imprison him, make him liable for all damages; revoke his letters of administration, etc., if he did not do so; but still with her own boundaries such legal duty would terminate. It could not reach Kansas. In Kansas no legal duty can be recognized except such as is imposed by her own laws. And even Kansas could not of herself impose a legal duty upon a foreign administrator who has never surrendered himself to her jurisdiction. No process from her courts could reach him, and no power could be found within her borders to compel him to sue or to compel him to perform any other act. Now we suppose that it will not be claimed that a legal duty could be imposed where no power exists to enforce such duty. The legal power to enforce a legal duty and the duty itself must be coëxtensive; and where there is no power to enforce the duty, there is no duty in law. The laws of Kansas merely give permission for foreign administrators to sue. They do not attempt to enforce or provide for enforcing suits by a foreign administrator. Under the laws of Kansas, a foreign administrator may sue or not sue in Kansas, just as he chooses. And if he does not choose to sue as in this case, and if the suit can be brought only in Kansas as in this case (the defendant and his property all being in Kansas), then must justice fail? or may the heirs and distributees, the real parties in interest, the parties

beneficially interested, commence an action for themselves? It is a favorite maxim in jurisprudence, that for every legal wrong there is a remedy; and if the common law does not furnish the remedy, equity will. Now here is a legal wrong. The defendant Pratt has wrongfully used $6,696.98, which belonged to the plaintiffs and not to him. He resides in Kansas, and his property is in Kansas, and no remedy for the wrong exists against him anywhere else. The plaintiffs have no remedy in Kansas, or elsewhere, to compel the administrator or any other person to sue for them. Therefore, may they not commence the action for themselves? May they not sue directly and in their own names for the enforcement of their legal rights, and not wait for an unwilling administrator to sue for them? Of course, while they were minors, they would have had to sue by their next friend; but in that case they could have selected their next friend. And now, as they have arrived at their majority, they may sue for themselves.

We do not think that the statute of limitations bars the plaintiffs' action. They arrived at their majority and became acquainted with their rights within less than one year prior to the commencement of this action. Their minority alone is sufficient to take the case out of the operation of the statute. Of course the statute governing in this case is our Kansas statute.

The judgment of the court below will be reversed, and cause remanded for further proceedings.

All the Justices concurring.