2007 OK 68

In the Matter of the ESTATE OF Joseph Odell BLEEKER, Deceased,

Ilene McGehee, former Administratrix of the Estate of Joseph Odell Bleeker, Deceased, Appellant,

v.

Arvest Trust Company, Personal Representative of the Estate of Joseph Odell Bleeker, Deceased, C.D. Bleeker, Connie Dale and Lavena Dale, Appellees.

No. 102,936.

Supreme Court of Oklahoma.

Sept. 18, 2007.

Jerry L. Colclazier, Colclazier & Associates, Seminole, OK, for Appellant.

B.C. Harris, Shawnee, OK, for Appellee Arvest Trust Company.

Rob L. Pyron, M. Bradley Carter, Seminole, OK, for Appellees C.D. Bleeker, Connie Dale and Lavena Dale.[2]

OPALA, J.

¶ 1 The **dispositive first-impression question** on certiorari is whether the American

**2.** Identified herein are only those counsel for the parties who have entered an appearance in this cause (as required by Okla.Sup.Ct.R. 1.5(a), 12 O.S.2001, Ch. 15, App.1) and whose names appear on the certiorari briefs.

common law settled in the last century and half, which in circumscribed circumstances allows persons other than the estate's fiduciary to bring litigation for recovery of estate assets, should be adopted in Oklahoma. We answer in the affirmative and reverse the contrary trial court's ruling.

## I

### THE ANATOMY OF LITIGATION

¶2 Joseph Odell Bleeker (decedent) died intestate on 3 February 2004. His aunt, Ilene McGehee (McGehee), petitioned seven months later for letters of administration.[3] On 27 September 2004 the trial court appointed McGehee administratrix[4] and determined the beneficiaries (under the regime of intestate succession) to be McGehee, Lavena Dale, C.D. Bleeker and Adrian Dale (aunts and uncles of the decedent). McGehee was later removed as administratrix and Arvest Trust Company (Arvest) appointed successor personal representative.[5]

¶3 The litigation phase here under consideration was initiated by McGehee's post-removal quest for leave to prosecute as beneficiary a claim on behalf of the estate against appellees (Lavena Dale, C.D. Bleeker and Connie Dale)[6] to recover personalty which she claimed had been converted from the estate. The facts surrounding the quantum of estate assets to be recovered and the circumstances of their alleged removal by appellees are in dispute. According to paperwork filed by McGehee in the probate case, the decedent's estate consisted of a 1994 pickup truck, a travel trailer, various household goods, certain mineral interests, some heirloom jewelry and approximately $420,000 in cash that was stored in two lock boxes placed in the travel trailer.[7] She represents that the day after decedent's death appellees entered the trailer, took possession of the two lock boxes and of the cash. Shortly after her appointment as personal representative McGehee requested an order compelling Lavena Dale and C.D. Bleeker to turn over to the personal representative all estate assets in their possession. She asserted that appellees failed to surrender over $200,000 of the converted funds. According to these appellees' paperwork on file in the case, the property "was kept safe" by "C.D. Bleeker and Ms. Dale" and "was promptly and fully turned over to the estate."[8] On 12

3. Letters of administration are "[f]ormal document[s] issued by probate court appointing one an administrator of an estate." Black's Law Dictionary 814 (5th ed. 1979). See 58 O.S.2001 § 101 et seq (letters testamentary), § 121 et seq. (letters of administration).

4. An **administrator** is defined as a "person appointed by the court to administer (i.e., manage or take charge of) the assets and liabilities of a decedent (i.e., the deceased). Such person may be a male (i.e. administrator) or a female (i.e. administratrix). If the person performing these services is named by the decedent's will, he is designated as the executor, or she [as] the executrix, of the estate." Black's, supra note 3 at 43 (emphasis added).

5. The personal representative is an estate's court-appointed manager. The terms of 58 O.S.2001 § 11 provide:

 As used in this title, **"personal representative" includes** executor, administrator, administrator with will annexed, conservator, guardian and persons who perform substantially the same function under the law governing their status and **includes a successor personal representative** appointed to succeed a previously appointed personal representative.
 (emphasis added).

The Uniform Probate Code [UPC] uses this term almost exclusively, instead of "executor" or "administrator." For the UPC's definition of "personal representative" see § 1–201(35).

6. Two of the appellees (Lavena Dale and C.D. Bleeker) are beneficiaries of the estate. We note that although the third appellee (Connie Dale) is described by appellees' briefs as a beneficiary of the estate as well as a cousin of the decedent, the record does not support this characterization.

No objection was made below by any of the appellees to litigating the matter *within the probate proceeding.* Because the propriety of its filing in the probate was not challenged and the question does not affect jurisdiction, we express no opinion with respect to the procedural correctness of this intra-probate litigation. *Jernigan v. Jernigan,* 2006 OK 22, ¶¶ 16–19, 138 P.3d 539, 545–46.

7. Administratrix's response to the Motion to Remove Personal Representative and Objection to Motion to Waive Bond at pgs. 1, 3, filed 22 March 2005 (record on appeal, pgs 34, 36).

8. Appellee's Motion to Remove Personal Representative and Objection to Motion to Waive Bond at p. 3, filed 8 March 2005 (record on appeal, p. 21). The record does not reveal what estate

November 2004 McGehee submitted an application for counsel fees and costs in the amount of $11,363.39 for services rendered from 1 July 2004 through 8 November 2004.

¶ 4 On 8 March 2005 appellees moved to replace McGehee as administratrix because she had failed to post a bond, timely notify creditors, file an inventory and complete tax returns. They asserted the claim of over $11,000 for an attorney's fee was excessive. McGehee responded that she had been unable to find a surety willing to post the bond, that the failure timely to file the various estate papers was inadvertent and partly caused by appellees' conduct and that the request for counsel-fee award was not excessive. McGehee explained the primary focus of her activities had been to identify and locate estate assets. Her lawyer had taken a number of depositions in an effort to recover missing estate personalty.

¶ 5 Before the trial court ruled on appellees' removal motion, McGehee filed an "ancillary" petition [9] in the probate case, alleging that appellees had taken approximately $420,000 in cash and refused to turn over $200,000 of that amount. She rested her claim on three theories of recovery—conversion, common-law fraud and conspiracy to defraud. The prayer sought actual and punitive damages as well as an attorney's fee and costs.

¶ 6 The trial court removed McGehee as administratrix and appointed Arvest as the estate's personal representative. It directed Arvest to examine the evidence and to make an independent decision on whether the estate should press the claim against appellees. Arvest's report to the court states that, upon a review of the evidence, the probability of recovering cash from appellees was too remote to justify the expenditure of estate funds for its pursuit.[10]

¶ 7 McGehee then moved to enter the pending intra-probate proceeding on the court's non-jury trial docket. She argued that as an estate's beneficiary she has standing to pursue a claim to collect missing estate assets when the estate's court-appointed fiduciary manager refuses to so do. According to McGehee her petition stated a *prima facie* case of embezzlement or alienation of property by the appellees within the meaning of 58 O.S.2001 § 292.[11] Appellees countered that the probate statutes authorize only the court-appointed fiduciary manager to bring an action to recover estate property. They argued there is no Oklahoma authority for an estate's beneficiary to pursue a claim on behalf of the estate and that McGehee's counsel has no evidence to support the claim.

¶ 8 **The trial court denied McGehee's motion for leave to prosecute. It dismissed the pending intra-probate proceed-**

property the appellees have taken into their possession and later turned over to the personal representative.

9. McGehee initiated the proceeding in the probate case on 22 March 2005 by a petition mislabeled as an "Ancillary Petition." Ancillary proceedings in probate are limited by statute. See the terms of 58 O.S.1981 § 339, which provide that "[w]hen a [creditor's] claim is rejected the holder may bring suit as an ancillary proceeding in the probate case or as an independent action. ...." The term "ancillary" is frequently used in connection with administration proceedings of an estate in a state other than that in which the estate is probated. *See, e.g., Estate of Miller v. Miller*, 1988 OK CIV APP 19, ¶ 7, 768 P.2d 373; *Mitchell v. Cloyes*, 1980 OK 184, ¶ 13, 620 P.2d 398, 400.

10. Arvest's Report to the Court, filed 5 May 2005, states:

"Comes now Arvest Trust company, Personal Representative of the estate of Joseph Odell Bleeker and makes this report to the Court as directed in the Order entered herein March 21, 2005, and filed March 29, 2005. Arvest Trust company as Personal Representative was ordered to and has reviewed the depositions and other evidence available and made an independent decision about pursuing the Ancillary Petition filed herein March 18, 2005. The Personal Representative believes the probability of recovery is not sufficient to justify the expenditure of estate funds to pursue the Ancillary Petition."

11. The terms of 58 O.S.2001 § 292 (A) provide:

If any person, before the granting of letters testamentary or of administration, embezzles or alienates any of the monies, goods, chattel or effects of a decedent, the person is chargeable therewith, and liable to an action by the executor or administrator of the estate, for double the value of the property so embezzled or alienated, to be recovered for the benefit of the estate.

ing for want of a proper party plaintiff.[12] Its denial of McGehee's request is expressly rested on the absence of authority or standing for an estate beneficiary to pursue an action on behalf of the estate when the personal representative has declined to litigate the claim sought to be pressed. The Court of Civil Appeals (COCA) affirmed the trial court's order.[13] McGehee seeks certiorari review.

## II

## THE PARTIES' ARGUMENTS ON CERTIORARI

¶ 9 McGehee asserts the **dispositive issue** in this case is one of first impression— **whether an estate beneficiary has standing to seek leave to pursue an action to collect estate assets when the estate's court-appointed fiduciary manager refuses to do so.** She argues, based on jurisprudence garnered from other states, the American common law affords her an opportunity to prosecute such claim. She urges that nearly every state that has addressed the issue has held that when, for any reason, a legal estate representative elects not to press a claim, the beneficiaries may seek leave to maintain

their own action to recover the assets to be pursued for the benefit of the estate.[14]

¶ 10 Appellees counter that, in the absence of a statute permitting a beneficiary to sue, the decision either to or not to pursue a claim on behalf of the estate lies solely within the province of the personal representative. They assert the trial court's denial of McGehee's quest to prosecute the claim against them was based on several factors. According to appellees the trial court took into account that (l) the former administratrix had spent nearly $12,000 of estate funds on trying to prove they had taken money from the estate and were withholding the removed funds; (2) McGehee was removed as administratrix for failing to fulfill her statutory duties and (3) the new personal representative had examined the facts and decided not to pursue the claim. They urge the trial court's decision, based on "good evidence and sound discretion," is not tainted by abuse of discretion or failure to weigh critical facts. Appellees assert that McGehee lost her chance to pursue the claim *qua* administratrix and should not now be allowed to continue her quest "at the expense" of the estate and of other beneficiaries. They emphasize the record does not afford a sufficient factual

---

12. The trial court's order states:

Now on this 8th day of Dec. 2005, the above matter coming on pursuant to the Motion by former Personal Representative, and heir Ilene McGehee to enter on the Court's non-jury trial docket an ancillary action for embezzlement or alienation of property. They proposed action to be pursued by Ms. McGehee against C.D. Bleeker, Connie Bleeker, and Lavena Bleeker. **The P.R. having declined to pursue any such action on behalf of the estate and stating "the probability of recovery was not sufficient to justify the expenditure of estate funds to pursue the ancillary petition."**

The Court does hereby deny the Motion to Enter on the Non-jury Trial Docket for the reason **there appears no authority or standing for an heir to pursue a cause of action on behalf of the Estate when the duly appointed personal representative has declined to pursue the same,** save and except an action for wrongful death as authorized by specific statutory citation.

The **court therefore finds the Ancillary Petition** filed March 18, 2005 by Ilene McGehee **should be and the same is dismissed** with prejudice to refiling the same.
(emphasis added)

13. According to COCA's pronouncement (1) the executors and administrators are the only proper parties to press and defend all estate-related claims; their actions are binding upon the estate beneficiaries; (2) the beneficiaries have neither standing nor are proper parties to sue or to be sued; and (3) because McGehee did not first request the trial court to require the successor personal representative to proceed with the intra-probate proceeding, but rather sought to prosecute it herself, she has no standing to maintain an action to recover the estate's personalty.

14. McGehee calls our attention to In re Marks' Estate, 81 Or. 632, 160 P. 540 (1916); State ex rel. Palmer v. District Court of the Ninth Judicial Dist., 190 Mont. 185, 619 P.2d 1201 (1980); Rogers v. Bank of America Nat. Trust and Sav. Ass'n, 140 Cal.App.2d 228, 294 P.2d 959 (1956); In re Mendelson's Estate, 17 Misc.2d 845, 187 N.Y.S.2d 139 (1959); Schaefer v. Schaefer, 89 Wis.2d 323, 278 N.W.2d 276 (App.1979); Trotter v. Mutual Reserve Fund Life Ass'n, 9 S.D. 596, 70 N.W. 843 (1897); Rolnick v. Rolnick, 35 Misc.2d 456, 230 N.Y.S.2d 789 (1916); Ravenscraft v. Pratt, 22 Kan. 20, 1879 WL 802 (Kan.1879); Matheny v. Ferguson, 55 W.Va. 656, 47 S.E. 886 (1904).

basis for the relief McGehee seeks. According to appellees, there is no statutory right of a beneficiary to pursue a claim for the estate and this case does not tender the "right platform" for the court to create the right sought to be asserted.

¶ 11 Arvest claims the only money known to have been in the lock boxes is $220,000, which the appellees (C.D. Bleeker and Lavena Dale) delivered to the personal representative. According to Arvest, while the circumstances under which the appellees acquired access to the decedent's travel trailer and lock boxes as well as their subsequent actions may form a foundation for some claim, they cannot justify further expenditure of estate funds to pursue an action.

## III

### STANDARD OF REVIEW

■■■ ¶ 12 **Probate proceedings are regarded as matters of equitable cognizance.**[15] While an appellate court will examine and weigh the record proof, it must abide by the law's presumption that the nisi prius decision is legally correct. It is beyond the appellate court's power to disturb that decision unless it is found to be clearly contrary to the weight of the evidence or to some governing principle of law.[16]

15. Matter of Estate of Maheras, 1995 OK 40, ¶ 7, 897 P.2d 268, 271–72; *In re Estate of Eversole,* 1994 OK 114, ¶ 7, 885 P.2d 657, 661.

16. *Id.*

17. *See, e.g., Rogers v. Bank of America Nat. Trust and Sav. Ass'n, supra* note 14, 294 P.2d at 961; *City of Griffin v. McKneely,* 101 Ga.App. 811, 115 S.E.2d 463, 467 (1960); *Ravenscraft v. Pratt, supra* note 14; *State ex rel. Palmer v. District Court of the Ninth Judicial Dist., supra* note 14, 619 P.2d at 1203; *Buchanan v. Buchanan,* 75 N.J.Eq. 274, 71 A. 745, 747–48 (1909); *In re Marks' Estate, supra* note 14, 160 P. at 542; *Dickson v. Klett,* 211 S.W.2d 381, 385 (Tex.Civ. App.1948); *Trotter v. Mutual Reserve Fund Life Ass'n, supra* note 14, 70 N.W. at 844; *Matheny v. Ferguson, supra* note 14, 47 S.E. at 888; *Schaefer v. Schaefer, supra* note 14, 278 N.W.2d at 279.

18. *State ex rel. Reirdon v. Marshall County Court,* 1938 OK 424, ¶ 11, 81 P.2d 488, 492, 183 Okl. 274.

19. *Rogers v. Bank of America Nat. Trust and Sav. Ass'n, supra* note 14, at 961; *Ravenscraft v. Pratt,*

## IV

### THE PROBATE DIVISION OF A DISTRICT COURT MAY GRANT LEAVE TO AN ESTATE'S BENEFICIARY TO PROSECUTE AN ACTION ON BEHALF OF THE ESTATE

#### A.

#### The American Common Law Recognizes Exceptions to the General Rule That Estate Beneficiaries May Not Prosecute Actions for the Recovery of Personalty Belonging to the Estate

■■■ ¶ 13 As a general rule, beneficiaries of an estate may not themselves prosecute an action to recover personalty belonging to the decedent. The claim must be brought by the personal representative.[17] This is so because title to an intestate's personal property ordinarily vests in the personal representative of the estate for the benefit of the beneficiaries and creditors.[18] Several states have developed common-law jurisprudence which **recognizes certain exceptions to the general rule of ancient vintage** which may be invoked when some conduct by the personal representative—such as fraud, collusion[19] or refusal to act[20]—makes it neces-

*supra* note 14 (the beneficiaries of the deceased partner could maintain an action against the surviving partner to recover their share of the partnership property).

20. *State ex rel. Palmer v. District Court of the Ninth Judicial Dist., supra* note 14, 619 P.2d at 1203 (no estate beneficiary has standing to pursue the action by himself unless the personal representative fails to act on the claim); *City of Griffin v. McKneely, supra* note 17, at 467 (beneficiaries of the estate do not take title to personal property and cannot maintain an action for recovery or damage thereto except in special circumstances, such as fraud or the refusal of the administrator to act); *Buchanan v. Buchanan, supra* note 17 at 747–48; *In re Marks' Estate, supra* note 14 at 542 (if an administrator refuses to collect debts owing an estate and properly apply the proceeds, the beneficiaries may themselves realize upon them in the interest of the estate); *Dickson v. Klett, supra* note 17 at 385; *Trotter v. Mutual Reserve Fund Life Ass'n., supra* note 14, 70 N.W. at 844 (when an administrator refuses to bring action upon a claim of the estate, beneficiaries, creditors and others interested in

sary for beneficiaries to bring their own suit for the protection of an interest in the estate that would otherwise be lost. **While probate is governed by statutory procedure,[21]** substantive law in aid of probate's legal mission of capturing and distributing a deceased person's estate continues to be governed by common-law developments.[22]

its collection should have an adequate remedy); *Matheny v. Ferguson, supra* note 14, 47 S.E. at 888 (while claims due an estate should ordinarily be prosecuted by the personal representative, it may be done by the beneficiaries where it appears that the personal representative cannot or will not act); *Schaefer v. Schaefer, supra* note 14, 278 N.W.2d at 279 (when the legal representative has failed or refused to act, a beneficiary may maintain an action to recover assets for the benefit of the estate).

21. Probate is a special statutory proceeding. 58 O.S.2001 § 1 *et seq.; Williams v. Mulvihill,* 1993 OK 5, ¶ 8, 846 P.2d 1097, 1102. Its mainstream issues, procedural stages and special statutory remedies remain the same as they were in Oklahoma before 1969. The law confines them to: (1) ascertaining whether decedent died testate or intestate, and if testate, (2) what testamentary disposition, if any, may be admitted to probate, (3) the administration of the estate's assets and (4) the final account and distribution. *See* the probate procedure, 58 O.S.2001 § 1 *et seq.; Williams v. Mulvihill, supra,* at ¶ 8, 846 P.2d at 1102. Before the present Judicial Article of the Oklahoma Constitution (Art. 7, Okl.Const.) became effective on 13 January 1969, the remedial track for probate had its point of inception in the since-defunct county court. Although probate now begins and ends in the district court, certain interdocket remedial boundaries still survive. *Williams v. Mulvihill, supra,* at ¶ 8, 846 P.2d at 1102.

22. The American probate regime is patterned generally on the English that utilized judicial and legal institutions in three different systems—the ecclesiastical, the common-law and the chancery—each of which asserted authority over different aspects of the process. 2 Sir Frederick Pollock and Frederic W. Maitland, The History of English Law 348 (2d ed.1968); 1 J.G. Woerner & William F. Woerner, A Treatise on the American Law of Administration 472–79 (3d ed.1923); Lewis M. Simes & Paul E. Basye, The Organization of the Probate Court in America, 42 Mich. L.Rev. 965, 967–74 (1944). The probate of testaments, the granting of letters of administration and letters testamentary as well as the administration of personal property stood firmly vested in the ecclesiastical courts, whose procedures evolved from the Civil (Roman) and Canon (church) laws. Lewis M. Simes, Problems in Probate Law 388 (1946). Disputes over accounts lay exclusively within the jurisdiction of chancery courts, but those over the distribution of real property came within the exclusive cognizance of common-law courts. Chancery jurisdiction was largely concurrent with that of ecclesiastical courts. Because of its flexible procedure, chancery would be called upon to assume jurisdiction of various aspects of estate administration. As a result of this development equity's role in administration of decedents' estates became a common practice. *Id.* at 393–394. The Probate Act of 1857 transferred probate jurisdiction of all ecclesiastical courts to the Court of Probate and introduced identical procedures for land and personalty. The Judicature Act of 1873 consolidated most of the various tribunals in England to form a single unified court known as the Supreme Court of Judicature. That court was composed of two tribunals—the Court of Appeal and the High Court of Justice. The High Court functioned in five divisions. Those were called: Chancery, King's Bench, Common Pleas, Exchequer and Probate–Divorce–Admiralty. By the 1873 Act the last-named division came to be vested with the jurisdiction that earlier stood assigned to the Court of Probate.

Even though no church on this side of the Atlantic enjoyed either the status or the role of handling probate as did the Anglican Church in England and Wales, canon law nonetheless has influenced the development of the American probate law. Problems in Probate Law, *supra* at 412–13; Thomas E. Atkinson, Brief History of English Testamentary Jurisdiction, 8 Mo. L.Rev. 107 (1943). *See also Reaves v. Reaves,* 1905 OK 32, ¶ 14, 82 P. 490, 494, *15 Okl. 240. Reaves,* a pre-statehood decision, teaches that the Canon (church) and Civil (Roman) laws, as they were administered in England, were brought here by the early settlers of this country and came to be regarded as constituent parts of the adopted common law. The norms of these laws have been invoked in those cases to which they were deemed to be applicable. Because the early settlers had a need for probate law, Canon law was integrated into the body of unwritten (common) law of the colonies and paraded there under the broad rubric of the "unwritten laws of England." *Id. See in this connection Davis v. Baugh,* 33 Tenn. 477 (1853); *Crump v. Morgan,* 38 N.C. 91 (1843); *In re Davis' Estate,* 134 N.J. Eq. 393, 35 A.2d 880 (1944); *S. v. S.,* 29 A.2d 325 (Del.Super.1942).

Since there were no ecclesiastical tribunals on this side of the Atlantic Ocean, probate courts from their earliest colonial days (and into both the Field Code and the modern codes' periods) were regarded simply as exercising a part of equity jurisdiction. Equity to this day is governed by unwritten law. Probate's integration into the rubric of equity jurisdiction caused no constitutional complications inasmuch as the right of trial by jury applied neither in chancery nor in ecclesiastical courts. Whether extended by state or federal constitution, that right governs solely those common-law actions to which it stood attached in England.

The common law, which stands **legislatively declared** to be a constituent part of this State's body of law,[23] need not be drawn exclusively from English precedent, but may also be fashioned by utilizing other sources, including legal norms taken from common-law jurisprudence of sister states.[24]

### Today's Ratio Decidendi [25]

¶ 14 This court has not had an opportunity to deal with the question whether the probate division may grant leave to a beneficiary to prosecute an action on behalf of the estate. Although court-appointed fiduciary managers in probate proceedings have broad statutory authority to bring all actions necessary to collect assets, preserve and protect the estate,[26] **nothing in that body of law expressly prohibits a court from granting a beneficiary leave to bring an action on behalf of the estate when there are special circumstances that take the case out of the general rule.** The majority of other states which has dealt with this issue gives an affirmative answer to this question.[27] At this stage of American unwritten law's development and **absent any Oklahoma legislative guidance on the point, we are constrained to follow the common law developed by other state jurisdictions** over a period longer than a century of jurisprudence. We hence join today that majority

and adopt as this State's common law the rule that allows—in circumscribed circumstances—persons other than the estate's court-appointed fiduciary leave to pursue litigation for recovery of estate assets.[28]

¶ 15 **The trial court's blanket denial—as a matter of law—of McGehee's request for leave to prosecute a claim for the estate is erroneous.** It rests on an assumed absence of Oklahoma authority for a beneficiary to pursue an action on behalf of the estate. We hence reverse the trial court's order and remand the cause with certain directions to be explained and detailed later in this opinion.

## V

## GUIDANCE TO THE TRIAL COURT FOR PROCEEDINGS TO BE CONDUCTED ON REMAND

### A.

### The Procedure To Be Followed In Post–Remand Proceedings

¶ 16 The trial court treated McGehee's post-removal motion to set the case for a non-jury trial [29] as her application for leave to prosecute the pending claim which she had brought while still acting as administratrix.[30]

23. 12 O.S.2001 § 2.

24. *Reaves v. Reaves, supra* note 22, 82 P. at 494; *Brown v. Eckes*, 160 N.Y.S. 489, 491 (1916) (acquisition of property by capture of animals *ferae naturae* is a Roman-law concept); *Foster v. Reiss*, 18 N.J. 41, 112 A.2d 553, 554 (1955) (the doctrine of *donatio causa mortis* was borrowed by the Roman law from the Greeks, and became a part of the English and American common law); see in this connection Richard A. Pacia, Raymond A. Pacia, Roman Contributions To American Civil Jurisprudence, 49 R.I. Bar Jl 5 (May 2001).

25. *"Ratio decidendi"* is a Latin legal term meaning "[t]he principle or principles of law on which the court reaches its decision. The *ratio* of the case has to be deduced from its facts, the reasons the court gave for reaching its decision, and the decision itself.... Only the *ratio* of a case is binding on inferior courts, by reason of the doctrine of precedent." Oxford Dictionary of Law 2003, pp. 407–408. "The *ratio decidendi* of a case is any rule of law expressly or impliedly treated by the judge as a necessary step in reaching his conclusion...." Rupert Cross & J.W.

Harris, Precedent in English Law 8, 72 (4th ed.1991).

26. *See, e.g.,* 58 O.S.2001 §§ 251–253.

27. See cases in *supra* note 20. .

28. Today's pronouncement is not inconsistent with the Uniform Probate Code. The UPC, like Oklahoma's statutory probate procedure, does not expressly address whether someone other than an estate fiduciary may be authorized to bring a lawsuit for the recapture of estate assets. Section 1–103 of the UPC provides that "[u]nless displaced by the particular provisions of the Code, the principles of law and equity supplement its provisions."

29. For the text of the Motion to Enter on the Non-jury Trial Docket, see *infra* note 33.

30. After losing her fiduciary status, McGehee could not bring a claim on behalf of the estate without first securing the trial court's leave to do so. Orderly procedure requires her (1) to re-

When she was removed from that status, the paperwork she filed *qua* administratrix to prosecute the claim **lost all of its legal efficacy. It remains ineffective until** she either secures Arvest's approval to press the claim or **moves for and secures the court's leave to prosecute** it herself on behalf of the estate.

¶ 17 If in post-remand stages of this case McGehee should desire to re-press her request for leave to prosecute, **she must file new paperwork.** She should present to the court a formal application, acting in her capacity **as an estate beneficiary,** for leave to prosecute on behalf of the estate a claim for the recovery of missing estate assets. If, after an adversary proceeding, leave is granted, McGehee must then file a petition *qua* court-authorized beneficiary plaintiff stating for the estate the claim upon which her action is founded.

### B.

### Fact Issues Raised At Nisi Prius But Not There Resolved

 ¶ 18 Today's pronouncement settles but one **legal issue**—that of whether American common-law exceptions, which allow persons other than the court-appointed fiduciary manager of the estate to pursue litigation in circumscribed circumstances for recovery of estate assets, should be recognized in Oklahoma as part of this State's common-law development. The trial court's

order made no findings of fact or conclusions of law **on any fact issues** that were raised by the parties' paperwork. If McGehee pursues on remand her quest for leave to prosecute, the trial court should consider **all of the now-unanswered questions** that will be raised and must inquire into the circumstances **before deciding whether they warrant granting · McGehee the leave she seeks.**[31] The record before us reveals three unresolved fact issues. ·

¶ 19 1. *Whether Arvest's Report to the Court Was Supported By Proof That Could Afford A Basis For The Claim's Denial*

¶ 20 Except for its conclusory terms, Arvest's report to the court, by which the representative declined to prosecute a claim against the appellees, gave no basis or explanation for Arvest's view that the probability of recovering estate assets was not sufficient to warrant the expenditure of estate funds to pursue the claim.[32] Arvest's report clearly raises issues of fact. In the proceeding here under review the trial court's order failed to consider whether these issues were supported by proof that could afford a basis for the claim's denial.

¶ 21 2. *Whether The Former Administratrix Offered To Prosecute The Claim At Her Own Expense*

¶ 22 The trial court failed to consider whether certain statements in McGehee's motion[33] constituted an offer to prosecute

quest the new estate fiduciary to assume the responsibility for the claim's prosecution or (2) to join in an application to the court for leave to allow the original prosecutor to continue. If both requests be denied the party desiring to go forward with the claim should then file an application for leave to prosecute the already-filed claim. In other words, the court, on hearing the application and finding that the claim should be prosecuted, could impose the responsibility for prosecuting it either on the former or on the current fiduciary.

From an examination of the motion's content it is crystal-clear that she sought an opportunity to establish, in an adversarial evidentiary hearing, her standing *qua* estate beneficiary to press the instituted claim. **The meaning of a court-filed paper will not be assessed by its author-provided label but by its text.** *Clark v. Board of Education of Ind. Sch. Dist. No. 89,* 2001 OK 56, ¶ 10 n. 16, 32 P.3d 851, 855; *Horizons, Inc. v. Keo Leasing Co.,* 1984 OK 24, ¶ 4, 681 P.2d 757, 759; *Amarex,*

*Inc. v. Baker,* 1982 OK 155, ¶ 18, 655 P.2d 1040, 1043.

**31.** It is not the function of this court to make first-instance determinations of fact or legal questions which have not been made at nisi prius. *Broadway Clinic v. Liberty Mut. Ins. Co.,* 2006 OK 29, ¶ 26, 139 P.3d 873, 880; *Davis v. Gwaltney,* 1955 OK 362, ¶ 13, 291 P.2d 820, 824.

**32.** For the text of Arvest's report, see *supra* note 10.

**33.** The Motion to Enter Case On Non-jury Trial Docket at p. 5 states in pertinent part:

The Administrator has chosen not to pursue the Ancillary Petition filed by McGehee prior to his appointment in this probate case. McGehee believes that is because the administrator knows that McGehee intends to [pursue] ... the Ancillary Petition, that if McGehee pur-

the claim **at her own expense.** McGehee believed Arvest chose not to pursue the claim because Arvest knew that **she intended to prosecute it** and (a) if she won the estate would benefit, (b) but if she lost **the estate would not have expended any funds in that pursuit.**[34]

¶ 23 Even if the likelihood of recovering any missing estate assets were too remote to warrant **the expenditure of estate funds** for their pursuit, in light of statements in McGehee's brief, the trial court should ascertain whether she made a commitment to prosecute the claim entirely at her own expense.

¶ 24 *3. Whether McGehee's Quest For Leave To Prosecute The Claim Came Within Recognized Common-law Exceptions To The General Rule*

¶ 25 Because the trial court ruled that McGehee's quest for leave to file a lawsuit as beneficiary sought permission to prosecute a claim that is deemed unauthorized by Oklahoma law, it did not address the issue whether **she came within recognized American common-law exceptions.**[35]

▉ ¶ 26 The parties are on remand entitled to an **adversarial evidentiary hearing** antecedent to any judicial resolution of fact and law issues raised by Arvest's report as well as those by McGehee's application. Due process requires that both litigants be afforded an opportunity to present evidence in support of the request for and in opposition to McGehee's quest for leave to file a lawsuit on behalf of the estate.[36]

¶ 27 From **this record** we are convinced that **McGehee had no opportunity** to establish her claim for leave to bring an action on

behalf of the estate under long-recognized exceptions adopted today, which have been developed by the American common law.

## VI

## SUMMARY

¶ 28 We adopt today as Oklahoma's unwritten law the American common-law rule that allows, *in certain circumscribed circumstances,* persons other than the court-appointed fiduciary of a decedent's estate leave to pursue litigation for the recovery of estate assets.

¶ 29 If on remand the applicant-beneficiary should desire to seek leave to prosecute a claim on behalf of the estate, she must be given an opportunity to establish her fitness for leave by showing that she comes within recognized American common-law exceptions.

¶ 30 Both parties are entitled on remand to an adversarial evidentiary hearing that would afford them an opportunity for judicial resolution of the issues of fact and law that came to be tendered by the personal representative as well as by the former administratrix' application.

¶ 31 On certiorari previously granted to the former administratrix who sought leave to prosecute a claim for the estate, the Court of Civil Appeals' opinion is vacated; the trial court's order is reversed and the cause is remanded for further proceedings to be consistent with today's pronouncement.

¶ 32 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPA-

---

sues the Ancillary Petition and wins, it is the Estate which will be benefitted, and if McGehee pursues the Ancillary Petition and loses, the Estate will not have expended any Estate funds in that pursuit.

34. *Id.*

35. For a discussion of the American common-law exceptions to the general rule, see Part IV(A) *supra.*

36. Due process requires an orderly proceeding in which the parties are given an opportunity to be heard and to defend, enforce and protect their rights. Federal constitutional jurisprudence

teaches that an opportunity to be heard is an essential element of due process. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983). *See also, Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (due process of law requires an opportunity for "some kind of hearing" prior to the deprivation of a significant property interest). *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Jackson v. Independent School Dist. No. 16 of Payne County,* 1982 OK 74, ¶ 11, 648 P.2d 26, 31; *Malone v. Malone,* 1979 OK 21, ¶ 4, 591 P.2d 296, 298.

LA, KAUGER, WATT, TAYLOR, COLBERT, JJ., concur.