IN THE MATTER OF THE ESTATE OF POWERS
2022 OK CIV APP 26
Case Number: 119378
Decided: 06/07/2022
Mandate Issued: 07/07/2022
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2022 OK CIV APP 26, __ P.3d __

 

IN THE MATTER OF THE ESTATE OF LLOYD YATES POWERS a/k/a YATES POWERS, Deceased:

BECKY PARKER POWERS, Appellant,
v.
SYDNEY POWERS, Appellee.

APPEAL FROM THE DISTRICT COURT OF
CADDO COUNTY, OKLAHOMA

HONORABLE S. WYATT HILL, TRIAL JUDGE

AFFIRMED

Brian E. Duke, DUKE LAW FIRM, PLLC, Tahlequah, Oklahoma, for Appellant

Barry P. Squires, Kyle Eastwood, BUZBEE, UPCHURCH, SQUIRES & EASTWOOD, Anadarko, Oklahoma, for Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Becky Parker Powers (Spouse) appeals from an order of the district court in this probate proceeding. Based on our review, we affirm.

BACKGROUND

¶2 Lloyd Yates Powers (Decedent) died in April 2012. At the time of his death, Decedent was a resident of Colorado. His daughter, Sydney Powers (Administrator), subsequently initiated a probate proceeding in Denver County, Colorado. Spouse, who was Decedent's wife at the time of his death, is a devisee under Decedent's will, as is Administrator and Decedent's son, Corey L. Powers. The will bequeaths "the rest, residue and remainder of [Decedent's] estate equally" to the three of them.

¶3 Because Decedent had assets in Oklahoma, Administrator filed a Petition for Ancillary Probate of Last Will and Testament in the District Court of Caddo County, Oklahoma, in February 2015. Administrator also requested, consistent with a provision in the will, that she be appointed the personal representative of the estate. Soon thereafter, the District Court of Caddo County admitted the will to probate and appointed Administrator as personal representative.

¶4 Spouse filed a motion to vacate these and other determinations of the District Court of Caddo County. The district court denied this motion, and Spouse appealed. In an opinion for which mandate issued in March 2017, the determinations of the district court were affirmed by a separate division of this court.

¶5 In September 2020, Administrator filed a Final Account asserting that "all mineral rights have been sold" and "[t]hat there now remains in this ancillary estate the net proceeds from the mineral sale[.]" Administrator quoted the following from the will: "My Personal Representative . . . shall pay my just debts and the expenses of my last illness and funeral as soon after my death as may be conveniently done . . . ." Administrator asserted in the Final Account that "there remain unpaid obligations in the domiciliary estate, in the Denver Probate Court," and that "all bills of the decedent should be paid before assets are distributed to the devisees under the admitted will of the decedent." Administrator "request[ed] leave of the Court to transfer the monetary assets in this ancillary estate to the domiciliary estate in Colorado."

¶6 In October 2020, Spouse filed an Objection to Final Account. Spouse asserted that "no authority appears in the statutes for probate assets in this state to be subject to or subsidiary to the jurisdiction of another state," and also asserted that only "vague reference" had been made regarding the debts to be paid. In addition, Spouse asserted that probate assets in Oklahoma "remain unaccounted for" -- in particular, possible additional "oil and gas properties" of Decedent in Oklahoma. Finally, Spouse asserted she is entitled to a "widow's allowance" "for her maintenance during this probate proceeding now that there are funds available for it."

¶7 In response, Administrator asserted that 58 O.S. 2011 § 633

¶8 Following a hearing, the district court entered its Order Allowing Final Account and Distribution of the Estate. The order states that, "pursuant to the Personal Representative's Power to Sale Under Will, all mineral rights have been sold" and "[t]hat there now remains in this ancillary estate the net proceeds from the mineral sale[.]" The order states that "the net monetary assets in the amount of $42,088.49 shall be distributed to the attorney of record for the personal representative, [Administrator,] in the Denver Probate Court . . . with specific direction for the funds to be placed in the Attorney's Trust Account and for the funds to remain there until a specific order is issued by the Denver Probate Court[.]" The order also provides that "any unlisted or later discovered assets shall be distributed" equally to the devisees. Finally, the order further states that Spouse's "Application for a Widow's Allowance . . . is denied."

¶9 From this order, Spouse appeals.

STANDARD OF REVIEW

¶10 Probate proceedings are of equitable cognizance. In re Estate of Fulks, 2020 OK 94477 P.3d 1143In re Estate of Maheras, 1995 OK 40897 P.2d 268Fulks, ¶ 9 (footnote omitted). Issues of law, including issues of statutory construction, are reviewed under a de novo standard of review. Id. (footnote omitted).

ANALYSIS

¶11 Spouse asserts on appeal that the trial court erred (1) in authorizing the transfer of assets from Oklahoma to the probate estate of Decedent in Colorado, (2) in denying Spouse's request to use asset sale proceeds to search for additional assets of Decedent in Oklahoma, and (3) in denying Spouse's request for an allowance as the surviving spouse of Decedent.

I. Transfer of Assets

¶12 In arguing that the trial court erred in authorizing the transfer of assets from Oklahoma to the probate estate of Decedent in Colorado, Spouse takes issue with Administrator describing as "ancillary" the probate proceeding in Oklahoma, and as "domiciliary" the probate proceeding in Colorado. Spouse asserts that these terms "do not appear in Oklahoma probate statutes." However, Spouse is incorrect in this regard.In re Estate of Miller, 1988 OK CIV APP 19768 P.2d 373See, e.g., id., ¶ 7 ("This appeal deals with an ancillary probate proceeding in Oklahoma," and "[t]he original probate of the estate of [the decedent] was filed in Texas (the domiciliary state) . . . .").

¶13 Nevertheless, of greater importance is the reason Spouse takes issue with the use of these terms. In her view, they misleadingly imply that the present proceeding in Oklahoma is "subject to or subsidiary to the jurisdiction of another state,"Estate of Miller explained, "[i]t is well settled in Oklahoma that a foreign executor may not hold, or convey, title to real property located in Oklahoma," and "[p]ublic policy requires that Oklahoma law determine the transfer of title to real estate." 1988 OK CIV APP 19Smith v. Reneau, 1941 OK 99112 P.2d 160Estate of Miller stated that under circumstances involving a decedent of a foreign state who has real property located in Oklahoma, "an ancillary proceeding is necessary to vest title to real property located within this state." Estate of Miller, ¶ 10.

¶14 However, there is no indication that the Oklahoma district court, in the proceeding below, failed to exercise independent jurisdictional power over Decedent's real property in Oklahoma and apply Oklahoma law with regard to that property. Indeed, as Spouse acknowledges on appeal, in the proceedings below Administrator "cited [to] 58 O.S. § 63358 O.S. § 633

¶15 Spouse asserts, accurately, that "this authority [under § 633] is discretionary, and to be used only if 'it is necessary, in order that the estate, or any part thereof, may be distributed according to the will, or if the court is satisfied that it is [for] the best interest[s] of the estate[.]'" Section 633 provides:

Upon application for distribution, after final settlement of the accounts of administration, if the decedent was a nonresident of this state, leaving a will which has been duly proved or allowed in the state of his residence, and an authenticated copy thereof has been admitted to probate in this state, or if the decedent died intestate, and an administrator has been duly appointed and qualified in the state of his residence, and it is necessary, in order that the estate, or any part thereof, may be distributed according to the will, or if the court is satisfied that it is for the best interests of the estate, that the estate in this state should be delivered to the executor or administrator in the state or place of the decedent's residence, the court may order such delivery to be made, and, if necessary, order a sale of the real estate, and a like delivery of the proceeds. The delivery, in accordance with the order of the court, is a full discharge of the executor or administrator with the will annexed or administrator, in this state, in relation to all property embraced in such order, which, unless reversed on appeal binds and concludes all parties in interest. Sales of real state, ordered by virtue of this section, must be made in the same manner as other sales of real estate of decedents by order of the court.

¶16 Spouse points out that, in Estate of Miller, the Court affirmed the trial court's decision under § 633 not to deliver all of the decedent's assets in Oklahoma to the state of the decedent's residence (Texas), and, instead, to award a partial distribution of those assets to the decedent's pretermitted spouse equal to her statutory share which she elected to take under Oklahoma law. That is, in Estate of Miller, the spouse "was legally married to [the decedent] at the time of [the decedent's] death," yet "[the decedent's] will left his entire estate to his son"; therefore, "[decedent's spouse] elected to take against the will [i.e., pursuant to an applicable Oklahoma statute] as to the real property (mineral interests) which was the subject of the ancillary probate proceeding in Oklahoma." 1988 OK CIV APP 19Id. ¶ 10. The Court explained:

Section 633, as applicable here, would not authorize the Oklahoma probate court to order the real property sold and then transfer the proceeds to the foreign executor because this is authorized only when the real property or the proceeds of the sale thereof are to be distributed (in any event) to the beneficiaries named in the will and in accordance therewith.

Id. ¶ 11. The Court further explained:

In the case being considered, the widow has elected to take her statutory share instead of allowing the will to be followed. To permit the real property to be sold and the proceeds distributed to the Texas executor for distribution pursuant to the will would defeat the public policy and the statutes of the state of Oklahoma relating to a widow's right of inheritance from her deceased spouse.

Id.

¶17 The circumstances of the present case are distinguishable because Spouse is not a pretermitted heir and, instead, she merely seeks to recover her equal share of the estate's assets pursuant to the will.Estate of Miller is inapplicable to the circumstances of the present case.

¶18 Furthermore, in Oklahoma, "[t]he emphasis of the judicial process is to discern and effectuate the decedent's intent," In re Estate of Speers, 2008 OK 16179 P.3d 1265

¶19 On appeal, Spouse takes issue with the fact that the debts to be paid in the Colorado probate proceeding remained unspecified in this ancillary proceeding. However, counsel for Administrator asserted at the hearing below that any detailed demonstration of these debts are for the Colorado court alone to hear and determine, and are outside the Oklahoma court's purview. Spouse's counsel essentially agreed at the hearing that issues pertaining to the details of the debts are "not for" the Oklahoma court.

¶20 Finally, as Spouse acknowledges, distribution under § 633 is discretionary (i.e., "the court may order such delivery to be made" (emphasis added)), and whereas the district court in Estate of Miller declined to order distribution (i.e., prior to awarding the spouse her statutory share as a pretermitted heir), and its decision was determined to be within its discretion, the district court in the present case chose to order a distribution under § 633. Under the circumstances presented, circumstances that are distinguishable from those presented in Estate of Miller, we conclude that the district court's determination in this regard is not clearly contrary to the weight of the evidence or to some governing principle of law, and that the court acted within its discretion.

II. Additional Search for Assets in Oklahoma

¶21 Spouse asserts the district court erred in denying her request "to use asset sale proceeds to search for additional assets of the Decedent believed to exist in Oklahoma." However, although Spouse testified at the hearing that she was involved in the financial affairs of Decedent -- at least to the extent of being familiar with names of various oil and gas companies that formerly mailed Decedent royalty checks -- and although she testified at the hearing that she believed, based on this knowledge, that at least some of Decedent's mineral interests had been overlooked or were missing from the Final Account, Spouse was unable to testify regarding any specific property that had not been identified by Administrator.

¶22 Moreover, Administrator retained counsel for the specific purpose of conducting title research in Oklahoma, research that concluded no additional assets existed.Video Indep. Theatres, Inc. v. Cooper, 1966 OK 219421 P.2d 833

¶23 Counsel for Administrator stated at the hearing that every effort had been made to locate Decedent's assets in Oklahoma. Relatedly, the court observed that Administrator (as personal representative and heir) had as much motivation as Spouse to discover all of Decedent's Oklahoma assets. Counsel for Administrator also stressed that while the existence of additional assets was technically unknown, given the efforts already expended the existence of such assets was unlikely and, moreover, the debts of the estate were only increasing with time as a result of interest and fees. Counsel for Administrator also noted that any further research would require the expenditure of additional proceeds of the estate, a fact with which Spouse does not disagree, arguing, as she does on appeal, that the district court erred in denying her request to use asset sale proceeds to search for additional assets.

¶24 Based on our review of all the circumstances, we conclude the district court fairly and properly resolved this issue by denying Spouse's request -- a request that, if granted, would further delay this proceeding and payment of debts -- while at the same time requiring, as set forth in the order, that "any unlisted or later discovered assets shall be distributed" equally to the devisees. The court's determinations in this regard are neither clearly contrary to the weight of the evidence, nor contrary to law.

III. Spousal Allowance

¶25 Spouse asserts the district court erred in denying her "request for a widow's allowance." Title 58 O.S. § 314

If the amount set apart as aforesaid [i.e., in prior statutory provisions regarding certain exempt property items to be set apart for the decedent's family members] be less than that allowed, and insufficient for the support of the surviving spouse and children, or either, or, if there be no such personal property to be set apart, and if there be other estate of the decedent, the court may in its discretion make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstances during the progress of the settlement of the estate, which, in case of an insolvent estate, must not be longer than one (1) year after granting letters testamentary, or of administration.

Section 315 provides:

Any allowance made by the court in accordance with the provisions of this article must be paid in preference to all other charges, except funeral charges or expenses of administration, and any such allowance, whenever made, may, in the discretion of the court, take effect from the death of the decedent.

¶26 Based on these provisions,

The allowances provided by [these statutory sections] are exempt and must be paid prior to any other debts or expenses except funeral and last death expenses. Prior to the sale of the estate assets, the estate had no funds to provide the widow's allowance to [Spouse] under these provisions. [Spouse] was accordingly entitled to an allowance as soon as the estate had liquid assets to provide for it.

¶27 Spouse appears to be arguing that payment of a spousal allowance is mandatory. However, "[t]he matter of a family allowance . . . is within the discretion of the court[.]" Reed v. Charles Broadway Rouse, Inc., 1935 OK 108750 P.2d 1097

¶28 The Reed Court also explained that "[t]he general rule is that it is the duty of a widow to make her claim for allowance promptly." Id. ¶ 20 (emphasis added) (citation omitted). Confronted with circumstances "[w]here application for [the] widow's allowance out of an insolvent estate [was] not made for more than three years after letters of administration [were] granted," the Reed Court concluded it was "not an abuse of discretion [for the district court] to disallow same." Id. ¶ 0 (Syllabus by the Court).

¶29 The present case involves a similarly lengthy delay. In fact, Spouse's request was not made until more than three years had passed since issuance of mandate in the prior appeal in this ancillary probate proceeding. Relatedly, while a statutory allowance is plainly intended "for the maintenance of the [spouse] . . . during the progress" of the proceeding, 58 O.S. § 314

¶30 Finally, it is undisputed that a request for a spousal allowance remains pending in the domiciliary probate proceeding in Colorado. As counsel for Administrator stated at the hearing regarding related issues: "The purpose of this Ancillary Probate is to administer the assets [in Oklahoma] in a fair manner and only one Court can do that. If we have multiple Courts adjudicating the expenses of the estate it would cause judicial chaos." As stated by the district court at the hearing, "this case only administers and deals with the assets here in Oklahoma." Although we need not decide the issue whether the Oklahoma district court has the authority to award, out of Decedent's estate, a spousal allowance in this ancillary proceeding when the issue of a spousal allowance remains pending in the domiciliary probate proceeding, it is nevertheless notable that the Oklahoma district court's denial of Spouse's request has the added virtue of avoiding the "judicial chaos" of multiple courts deciding the same issue and potentially awarding duplicative spousal allowances out of the same estate.

¶31 Because Spouse's request for a spousal allowance in this proceeding was excessively tardy, and because a request for a spousal allowance has been made in the domiciliary probate proceeding, we conclude the district court acted within its discretion in denying Spouse's request in this proceeding.

CONCLUSION

¶32 We conclude the district court in this ancillary probate proceeding did not err in authorizing the transfer of assets from Oklahoma to the domiciliary probate estate of Decedent in Colorado, in denying Spouse's request to use asset sale proceeds to search for additional assets of Decedent in Oklahoma, and in denying Spouse's request in this proceeding for an allowance as the surviving spouse. Therefore, we affirm the district court's order.

¶33 AFFIRMED.

FISCHER, C.J., and HIXON, J., concur.

FOOTNOTES

58 O.S. 2011 § 677

See also Porter v. Okla. Bacone Coll. Tr., 1959 OK 174346 P.2d 335Pease v. Hudson, 1945 OK 79157 P.2d 909

id., and it is this meaning that is employed by the Court in Miller in describing the Oklahoma probate proceeding.

We note that the term ancillary proceeding is not only used in Oklahoma in contradistinction to the term domiciliary proceeding, but it is also sometimes employed to refer to a suit brought pursuant to 58 O.S. 2011 § 339See 58 O.S. 2011 § 339In re Estate of Bleeker, 2007 OK 68168 P.3d 774

Ancillary proceedings in probate are limited by statute. See the terms of 58 O.S. 1981 § 339See, e.g., [In re Estate of Miller]; Mitchell v. Cloyes, 1980 OK 184620 P.2d 398

In re Estate of Bleeker, ¶ 5 n.9.

See also In re Estate of Davis, 2006 OK CIV APP 31132 P.3d 609

Fulks, ¶ 9, we turn our attention solely to the arguments presented by Spouse rather than to a review of each statutory requirement.

So the stipulation would be is if [Administrator] . . . were called to testify, she would testify in conformance with her Final Account, that she did not find any other assets, even though she hired another firm to look for those assets, and all of the assets that were found in Oklahoma were sold and accounted for and basically everything else should be dealt with in Colorado.

Is that correct, [counsel for Spouse]?
[Counsel for Spouse]: That is correct.
THE COURT: Do you stipulate to that?
[Counsel for Spouse]: Yes, Your Honor.
THE COURT: You don't need to call her or Cross-Examine her at this time?
[Counsel for Spouse]: We do not.

may in its discretion make such reasonable allowance . . . ." (Emphasis added.) See also In re Estate of Hardaway, 1994 OK 152872 P.2d 400

Reed -- pertaining to an "application for a widow's allowance out of an insolvent estate" -- renders this assertion unpersuasive and, moreover, the basis of the delay and the believability of Spouse's assertions presented a credibility issue for the trial court.